**UNITED BROTHERHOOD OF CARPEN-
TERS AND JOINERS OF AMERI-
CA, AFL–CIO, et al., Petitioners,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.
No. 15502.**

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 22, 1960.

Decided Dec. 15, 1960.

**534**

Duane B. Beeson, Atty., N. L. R. B., of the bar of the Supreme Court of California, Washington, D. C., pro hac vice, by special leave of court, with whom Dominick L. Manoli, Associate Gen. Counsel, N. L. R. B., Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., and Richard J. Scupi, Atty., N. L. R. B., Washington, D. C., were on the brief, for respondent.

Thomas J. McDermott, Associate Gen. Counsel, N. L. R. B., Washington, D. C., also entered an appearance for respondent.

Before EDGERTON, WASHINGTON and DANAHER, Circuit Judges.

EDGERTON, Circuit Judge.

Petitioners are the United Brotherhood of Carpenters and Joiners of America, AFL–CIO, and some of its district councils and locals. They ask us to set aside an order of the National Labor Relations Board [1] based on alleged violations of §§ 8(b) (1) (A), 8(b) (2) and 8(b) (4) (A) of the National Labor Relations Act, as amended, 61 Stat. 141 (1947), 29 U.S.C.A. §§ 158(b) (1) (A), 158(b) (2), 158(b) (4) (A). The Board asks enforcement of its order.

Endicott Church Furniture, Inc., contracted to install pews in churches at five separate sites. General carpentry work at each site was done by employees affiliated with petitioner unions, whose policies as expressed in the by-laws and working rules of the district councils forbade members to work with nonunion carpenters. The conduct found illegal occurred when nonunion employees of Endicott attempted to install the pews.

## I. Section 8(b) (4) (A).

This subsection of the National Labor Relations Act makes it "an unfair labor practice for a labor organization or its agents— * * * (4) to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process,

Bernard Dunau, Washington, D. C., for petitioners.

transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: (A) forcing or requiring \* \* \* any employer or other person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person." § 8(b) (4) (A), 61 Stat. 136, 141 (1947), 29 U.S.C.A. § 158(b) (4) (A).

A majority of the Board found violations at Minneapolis, Minnesota, by Local 7 and Twin City District Council; at Hopkins, Minnesota, by Local 889 and Twin City District Council; and at Royal Oak, Michigan, by Local 998 and Wayne District Council.[2]

1. *Minneapolis.* After inquiring of Endicott's employees and learning they were nonunion, one Jaeger, a carpenter foreman on the job and a member of Local 7, so informed a carpenter and other craftsmen. When Local 7's business agent Erickson stopped at the job site Jaeger asked him what to do, was told to continue work and did so. Erickson called in Carlgren, business agent of Twin City District Council. Carlgren afterwards told Newstrum, a member of the church building committee, that the work could not be completed if the nonunion men remained on the job. But it was finally agreed that union and Endicott employees would share the work. There was no stoppage.

The Board found that Jaeger's "comment to the men about the nonunion status of the Endicott carpenters was, under these circumstances, a reminder of their duty not to work with nonunion

men, and constituted unlawful inducement whether or not an actual work stoppage ensued", and that Jaeger and Local 7 therefore violated § 8(b) (4) (A). It found that the Twin City District Council was equally responsible, "in view of its by-laws requiring Jaeger to act as he did"[3] and the conduct of the business agents who "approved" and "implemented" Jaeger's conduct "by prevailing upon those in authority at the project to reassign part of the work to union men."

Section 8(b) (4) (A) "describes and condemns specific union conduct directed to specific objectives \* \* Employees must be induced; they must be induced to engage in a strike or concerted refusal \* \* \*." Local 1976, United Brotherhood of Carpenters and Joiners of America v. National Labor Relations Board, 357 U.S. 93, 98, 78 S.Ct. 1011, 2 L.Ed.2d 1186. United Wholesale and Warehouse Employees, Local 261 v. National Labor Relations Board, 108 U.S. App.D.C. 341, 282 F.2d 824, 827. It has been held that unsuccessful inducement may be a violation of the Act. Highway Truck Drivers & Helpers Local 107, etc. v. National Labor Relations Board, 107 U.S.App.D.C. 1, 4, 273 F.2d 815, 818; National Labor Relations Board v. Denver Bldg. & Construction Trades Council, 10 Cir., 193 F.2d 421; National Labor Relations Board v. Laundry, Linen Supply & Dry Cleaning Drivers Local 928, 9 Cir., 262 F.2d 617. But there is no evidence that the present petitioners even tried or wished to cause a stoppage. Even if, as the Board found, Jaeger's comment to the contractor's employees was "a reminder of their duty not to work with nonunion men", in the light of other evidence it does not show that he tried to induce a strike. He neither

---

2. A similar finding with respect to Local 1397 and Nassau County District Council, at East Williston, Long Island, is not contested and petitioners acquiesce in an appropriate order.

3. The Constitution and By-Laws of the Twin City District Council provide: "Rule 10. No union man will work on a job where nonunion carpenters are employed unless authorized by action of

the Organization Committee of the District Council. \* \* \* Rule 22. \* \* \* Foremen who assign any work coming under the jurisdiction of the United Brotherhood to any other craft; or who violates any of the foregoing working rules; or who requests any member under his supervision to violate any of the foregoing rules, shall be subject to a fine."

stopped work nor advised any one else to stop. He sought Erickson's advice and Erickson, by telling him to continue work, showed that Local 7 did not intend to cause a stoppage. We find no substantial evidence of a violation of § 8(b) (4) (A) at Minneapolis.

2. *Hopkins.* Hovland, a member of the Twin City District Council, was carpenter foreman at this project and on the critical day was acting superintendent for the general contractor. It is not disputed that Hovland induced a work stoppage by telling employees the Endicott men were nonunion and he was quitting, and urging employees to quit. The question is whether he acted for the council or for the contractor. The Board found that the council's working rules bound Hovland, under penalty of fine, not to work with nonunion carpenters or permit men he supervised to do so.[4] It concluded "in view of all the circumstances" that Hovland "subordinated his management duties" and acted for the council. Substantial evidence supports this inference.

In Carpenters District Council of Milwaukee County, etc. v. National Labor Relations Board we set aside a Board finding that a union-member foreman acted for the union when he informed his men of a union order. We did so because the finding was based solely on the "presumed effect" of the foreman's union duties. We thought § 2(3) of the Act, which excludes from the term "employee" any "individual employed as a supervisor", was intended "to give the employer a free hand to discharge foremen as a means of insuring their undivided loyalty, in spite of any union obligations." We held that in "the absence of any evidence to the contrary, we should assume that this employer prerogative has had the effect which Congress contemplated" and that a foreman would not "ignore his role as a representative" of his employer "and become merely a 'medium of transmission'" of union orders. 107 U.S.App. D.C. 55, 57, 274 F.2d 564, 566. In the present case the Board's finding was not based solely on the presumed effect of the foreman's union duties. One of the circumstances the Board considered was that Hovland, on learning that the Endicott men were nonunion, promptly quit work and asked others to do so. Petitioners point to a provision in the general contractor's agreement with the council that employees may refuse to work on a job where nonunion men are doing work within the union's jurisdiction. But this does not refute the Board's inference that Hovland was not acting for the contractor.

The Board also found that Local 889 violated § 8(b) (4) (A) when Linde, its business agent, urged employees to stop work. Substantial evidence supports this finding.

3. *Royal Oak.* Here Sievertsen, the general contractor's superintendent and a member of Local 1433, "raised the question of [the Endicott employees'] * * * union status with Campbell, the carpenter steward, Bubar, a carpenter, and some laborers, and asked Campbell to check on the matter." Campbell reported their nonunion status "to Sievertsen and the others". Sievertsen and others decided to call Local 998. Sievertsen called and asked a business agent "to come and check the job". Business agents Jacobs, Fair and Pinner came. When Jacobs asked if the Endicott men were nonunion, Sievertsen replied, "That's your department, that's why I called you". Sievertsen told a truck driver that "there might be a picket line around the church" next day, and in that case he would let the driver know not to report for work. There was a conflict in testimony, not resolved by the Trial Examiner or the Board, as to whether a work stoppage occurred.

The majority of the Board concluded that Local 998 violated § 8(b) (4) (A) in that (1) Campbell engaged in inducement by telling the contractor's employee the Endicott men were nonunion and (2) business agent Pinner (a) told the em-

4. See fn. 3, supra.

ployees they had to stop work and (b) participated in "the unlawful sequence of events initiated by Sievertsen". We find that the evidence that Pinner told the contractor's employees they had to stop work is not substantial. The Board found the council jointly responsible for the local's violations, and guilty of independent violations in that Sievertsen, who was "exercising the authority vested in him by the Council rules", (a) "induced and encouraged" an unlawful work stoppage and (b) instigated and acquiesced in the conduct of Campbell and Pinner.

The Board found that council work rules governing foremen applied to Sievertsen, that they obligated him to enforce council policy against working with nonunion men, and that he "felt himself bound by these provisions". His activity, according to the Board, was "hardly the conduct of a management representative concerned primarily with the timely completion of contract commitments, but rather is that of a union member whose first loyalty was to the union mandate that carpentry work be done only by members, and who, because of his supervisory status, was in a strategic position to carry out this mandate." The Board's inference that Sievertsen acted for the council and not for his employer would be tenable were it not that uncontradicted testimony strongly tends to show that the employer identified his interests with the union's. General contractor Anderson himself (1) told the Endicott men "You can't work, you will have to get out", and added that they "would probably be put out bodily by the union men"; (2) informed the Endicott foreman that he had always been and wanted to continue "clean" with the union; and (3) declined an invitation to attend settlement discussions, on the ground "that any settlement which was agreeable to the union was agreeable to him". The Board does not suggest that Anderson's statements were coerced by any threat of a work stoppage. Cf. Local 1976, United Brotherhood of Carpenters and Joiners

of America v. National Labor Relations Board, 357 U.S. at page 107, 78 S.Ct. at page 1020. We think these statements of Sievertsen's employer show that Sievertsen's conduct was consistent with his employer's wishes. The Board does not find nor does the record suggest that Sievertsen intended to cause a stoppage or that a stoppage occurred. His desire to turn matters over to the union parallels the desire his employer expressed. His statement to the truck driver is not shown to have been anything but a sound managment precaution against the chance of a stoppage. Even when there is an actual boycott, which was not found here, if the employer has consented "it cannot appropriately be said that there is a strike or concerted refusal to handle goods on the part of the employees." Local 1976, United Brotherhood of Carpenters and Joiners of America v. National Labor Relations Board, 357 U.S. at page 99, 78 S.Ct. at page 1016.

What we have said of Sievertsen applies in substance to Campbell, who, the Board found, acted "at Sievertsen's behest."

We find no substantial evidence of violation of § 8(b) (4) (A) at Royal Oak.

## II. Sections 8(b) (1) (A) and 8(b) (2).

Section 8(b) makes it "an unfair labor practice for a labor organization or its agents—(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7 * * * (2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) * * *."

Subsection (a) (3) of Section 8 makes it an unfair labor practice for an employer "by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization * * *." Section 7 [29 U.S.C.A. § 157] gives employees the right to organize and bargain collectively or refrain from doing so.

At Edison Park, Chicago, Christiansen, business agent of Local 181, told En-

dicott foreman Thomas and Endicott employee Shepler: " * * * You can't do any more work in here * * * If you are not union you will have to pack up your tools and leave * * * If you want to work in this state go down and get yourself a union card * * * and that's all the way you or any crew of Endicott's will install church furniture in the State of Illinois." Thomas then decided to stop work.

At Royal Oak, Pinner, business agent of Local 998, told Endicott foreman McClung and two other Endicott employees to leave the job because they were nonunion. They phoned Endicott but continued working. Pinner spoke to them again, and general contractor Anderson told them to get out or they would be put out bodily by union men. They left. Next morning McClung and an Endicott attorney met with the church's attorney and Pinner. After Pinner spoke of the union by-laws and the possibility of picketing, it was finally agreed that union carpenters would complete the installation under McClung's direction.

■ The Board found that the union's conduct caused Endicott's foreman at Edison Park and "the Endicott representatives" at Royal Oak [5] to discriminate with regard to the terms and conditions of employment of the Endicott employees within the meaning of § 8(a) (3) and therefore violated § 8(b) (2). Petitioners say they cannot have violated § 8(b) (2) since Endicott "had no alternative but to quit the premises when its presence became unacceptable" and "cannot be convicted of discrimination for failing to do what it was powerless to do." But in our opinion Endicott's conduct at both sites was at least a technical violation of § 8(a) (3). Cf. National Labor Relations Board v. Imparato Stevedoring Corp., 3 Cir., 250 F.2d 297, 302; National Labor Relations Board v. Pappas & Co., 9 Cir., 203 F.2d 569, 570; National Labor

Relations Board v. Lloyd A. Fry Roofing Co., 9 Cir., 193 F.2d 324, 327. The Board also found, and we agree, that the same union conduct violated § 8(b) (1) (A).

The Board held the Chicago and Wayne district councils jointly responsible with their locals. In view of the close supervision over business agents of the locals provided by the councils' by-laws and working rules we think the Board was right.

### III. The United Brotherhood.

A majority of the Board found the United Brotherhood responsible for all the conduct described above and for further violations of §§ 8(b) (1) (A) and 8(b) (2) through conduct of local and council officials for which the locals and councils were not charged.

■ The Brotherhood's General Laws require that by-laws and trade rules of locals and district councils shall not "conflict with the Constitution and Laws of the United Brotherhood, and must be approved by the First General Vice-President before becoming law". The Board's theory seems to be that the Brotherhood's approval of local and district rules makes the Brotherhood responsible for whatever is done, either legally or illegally, in carrying them out. The Board does not contend that the local and district work rules involved here are incapable of lawful application; in fact, counsel conceded in oral argument that in some situations compliance would be lawful. An example would be an individual union man's choosing not to apply for a job where he would have to work with nonunion men. Since not all compliance is unlawful, there can be no presumption that the Brotherhood endorsed unlawful conduct. We cannot accept the Board's implicit assumption that approval of the rules extends to their enforcement by illegal means or for an illegal purpose. Cf. National Labor Relations Board v. Mill-

---

5. Section 2(2) of the Act defines "employer" to include "any person acting as an agent of an employer, directly or indirectly". 61 Stat. 137 (1947), 29 U.S.C.A. § 152(2).

wrights' Local 2232, 5 Cir., 277 F.2d 217. The record does not show that the Brotherhood required or authorized the conduct to which, according to the Board's findings, the rules gave rise. It is not clear that Brotherhood approval of the rules imposed any requirement or mandate whatever. The rules were not always followed. At some union projects, Endicott crews worked without "incidents". The Board expressly found that the evidence did not show a nationwide compaign to compel Endicott to recognize the union.

No part of the Board's order should run against the United Brotherhood.

### IV. Breadth of Order.

Among other things, the Board's order requires those petitioners held to have violated §§ 8(b) (2) and 8(b) (1) (A) to cease and desist from "Causing or attempting to cause Endicott * * * or any other employer as to whom the Board would assert jurisdiction, to discriminate with regard to the terms or conditions of employment of its employees, within the meaning of Section 8(a) (3) of the Act:" and also to cease and desist from "In any other manner restraining or coercing employees in the exercise of the rights guaranteed in Section 7 of the Act * * *." The inclusion of other employers and other kinds of restraint or coercion is erroneous. Communications Workers of America v. National Labor Relations Board, 362 U.S. 479, 480, 80 S.Ct. 838, 4 L.Ed.2d 896; International Union of Operating Engineers, Local 150 v. National Labor Relations Board, 107 U.S.App.D.C. 19, 20, 273 F.2d 833, 834; Puerto Rico Drydock & Marine Terminals, Inc. v. National Labor Relations Board, 1960, 109 U.S. App.D.C. ——, 284 F.2d 212, certiorari denied, 364 U.S. 883, 81 S.Ct. 172, 5 L.Ed. 2d 104.

The Board should modify its order in conformity with this opinion. As so modified, the order will be enforced.

Affirmed in part, reversed in part.