314 F.2d 792
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS, LOCAL 901,
INTERNATIONALBROTHERHOOD OF TEAMSTERS, CHAUFFEURS,
WAREHOUSEMEN AND HELPERS OF AMERICA,Respondent.
 No. 6050.
 United States Court of Appeals First Circuit.
 March 11, 1963.
 
 Melvin J. Welles, Washington, D.C., with whom Stuart Rothman, General Counsel Dominick L. Manoli, Associate General Counsel Marcel Mallet-Prevost, Asst. General Counsel, and Vivian Asplund, Washington, D.C., Attorney, were on brief, for petitioner.
 Herbert S. Thatcher, washington, D.C., with whom David S. Barr, Washington, D.C., was on brief, for respondent.
 Before WOODBURY, Chief Judge, and MARIS* and ALDRICH, Circuit judges.
 ALDRICH, Circuit Judge.
 
 
 1
 Respondent, Local 901, the Puerto Rico local of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, was found by the Board to have violated sections 8(b)(4)(i) and (ii)(C) of the National Labor Relations Act, in that it 'induce(d) or encourage(d)' the employees of Valencia Baxt Express, Inc., hereinafter the employer, to engage in a strike, and 'threaten(ed)' the employer, with the object of forcing the employer to recognize respondent, when another union, Seafarers International Union of North America, etc., hereinafter SIU, had been previously certified by the Board. Respondent denies that the evidence warrants a finding that it either induced or encouraged the employees, or that it threatened the employer. It further asserts that, even if it did, the statute did not forbid its so doing after the one year presumption period following certification had expired where it appeared that the certified union was in fact no longer the choice of a majority of the employees, and where it had ceased to represent the employees in any substantial manner.
 
 
 2
 SIU was certified by the Board to represent the Company's employees on November 4, 1960. Early in the morning of November 6, 1961, respondent's pickets appeared outside the plant carrying a sign, 'On strike for recognition-- Teamsters Local 901.' In fact no strike of interruption of work occurred, nor did the pickets speak to the employees. The Board found that later in the morning respondent's president, one Amador, stated to the officials of the employer, 'The men are very itchy, they want to strike. I know of the condition of the company and I know that a work stoppage would kill you, but you have to recognize us because we have the cards and you have to sign a contract with us.'[1] The employer replied that it believed respondent had a majority, but declined to deal with it before consulting counsel. Thereupon respondent filed with the Board a request for an election, but did not withdraw the pickets. On November 7 the employer filed an 8(b)(7) (C) charge against respondent and later that day the picketing ceased. The following day SIU filed the instant charge. As a result the Board considered this charge rather than the election petition.
 
 
 3
 We have serious doubts about the violation of section 8(b)(4)(i). Obviously respondent did not 'induce' the employees to strike. We agree that even an unsrccessful attempt may 'encourage' employees to strike, N.L.R.B. v. Dallas General Drivers, Warehousemen & Helpers, Local No. 745, 5 Cir., 1959,264 F.2d 642, cert. den. 361 U.S. 814, 80 S.Ct. 54, 4 L.Ed.2d 61, but having in mind the rather clear evidence that the great majority of the employees were disgruntled with SIU, and that many had signed respondent's cards, it is hard to say this is what happened here. If respondent already had the men it would seem that a bona fide encouragement would have been readily successful. Hence there must be doubt whether a real attempt was made. Rather, the thrust of respondent's activities seems to have been directed at threatening the employer, a violation of section 8(b)(4)(ii). On this we see no question.
 
 
 4
 Respondent asserts that picketing alone is not a threat, cf. Fruit & Vegetable Packers and Warehousemen, Local 760 v. N.L.R.B., 1962, 113 U.S.App.D.C. 356, 308 F.2d 311, and that Amador's oral remarks to the employer were merely a 'warning' or prediction. However, in order not to be a threat a prediction must relate to an event over which the speaker has no control. Respondent is logically on the horns of a dilemma. We could disagree with the Board's finding that the placard and the picketing were not an encouragement of the employees to strike only because there was no strike when respondent controlled a mojority. But if a union with the votes talking strike if its demands are not acceded to is not a threat, it is difficult to think what would be.
 
 
 5
 We turn to respondent's defenses. Section 8(b)(4)(ii)(C) made respondent's threats illegal 'if another labor organization has been certified as the representative * * *.' Respondent asks us to modify 'certified' by adding, in effect, 'under such circumstances that the employer is obligated to recognize it.' More specifically if, because a year had elapsed since the certification and the employer had cause to doubt that the union still represented its employees, and therefore might decline to recognize the certification, Brooks v. N.L.R.B., 1954, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125, respondent contends that it was free to threaten the employer as a means of obtaining recognition.[2]
 
 
 6
 If Congress meant by 'certified' only unions with whom the employer had an undisputable duty to bargain, it could easily have said so. Failing this, we do not find such an exception easy to imply. Very different considerations may affect an employer's right to conclude that a union no longer represents its employees from those which would permit an outside union to come in and by threats seek to compel the employer to do so. Respondent denies that it has put the employer 'in the middle' in this particular case because it says that in fact it had already acquired SIU" § majority. However, an employer is not obligated to deny recognition to a certified union after the end of the first year even if it believes it may then lack a majority. The employer may still respect the cretification. Tungsten Mining Corporation v. District 50, United Mine Workers of America, 4 Cir., 1957, 242 F.2d 84, cert. den. 355 U.S. 821, 78 S.Ct. 27, 2 L.Ed.2d 36. For reasons set forth in Parks v. Atlanta Printing Pressmen and Assistant's Union, 5 Cir., 1957, 243 F.2d 284, cert. den. 354 U.S. 937, 77 S.Ct. 1397, 1 L.Ed.2d 1537, we believe that if Congress intended to allow a competing union, by threats, to derogate from that principle it would have set out the exception. We will not assume it.
 
 
 7
 Respondent makes a more appealing argument when it suggests there should be an implied exception in section 8(b)(4)(C) if the certified union has 'abandoned' its certification and in effect become 'defunct.' See Brooks v. N.L.R.B., supra, 348 U.S. at 98, 75 S.Ct. at 178; Rocky Mountain Phosphates, Inc., 1962, 138 N.L.R.B. No. 35; Schaefer Body, Inc., 1949, 85 N.L.R.B. 195. However, we agree with the Board that there is a vital difference between this and simply abandoning some of its duties towards its members. Cf. N.L.R.B. v. Superior Fireproof Door & Sash Co., 2 Cir., 1961,289 F.2d 713, 723; Connecticut Cabinet Corp., 1947, 72 N.L.R.B. 1016. SIU is not a union that has become defunct as such. It is undisputed that it has at all times been vigorously pursuing what it believes are its contractual rights resulting from arbitration. It has also performed some routine services for the employees. It may well be thought that this performance should have been better, or more extensive, but this is normally what is believed whenever a union loses its majority. We will not read an exception into the statute broad enough to meet respondent's attempt to equate inefficiency or ineffectiveness with abandonment of a certification. There were other roads open to respondent.
 
 
 8
 We confess that for reasons previously stated it is difficult to think of respondent as having simultaneously violated section 8(b)(4)(i) and section 8(b)(4)(ii). However, under the circumstances of this case, we think that within the principle of fitting an order to a respondent's demonstrated predisposition the Board did not exceed its jurisdiction in making the order broad enough to cover what is, essentially, two sides of the same coin.
 
 
 9
 A decree will be entered enforcing the order of the Board.
 
 
 
 *
 Sitting by designation
 
 
 [1]
 The Board further found, 'Amador threatened to stop the men fror working.' However, examination of the record shows that this was an inference drawn by the Board and not a summary of specific testimony
 
 
 [2]
 In passing, we might observe that this argument overlooks the fact that when SIU had an unquestionable certification it made a contract which arguably resulted, through arbitration, in a present contract. The parties have not discussed this matter, but such a contractual bar would seem to make SIU's loss of a majority irrelevant. See N.L.R.B. v. Marcus Trucking Co., 2 Cir., 1961, 286 F.2d 538, 593. Because we agree that it is irrelevant in any event, we do not consider this question