**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL 25, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, Respondent,**

New York Telephone Company, Intervenor.

Nos. 359, 363, Dockets 31724, 31728.

United States Court of Appeals Second Circuit.

Argued May 14, 1968.

Decided July 2, 1968.

Elliott Moore, Atty., N. L. R. B.
(Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Edward E. Wall, Atty., N. L. R. B., on the brief), for petitioner.

Ernest Fleischman, New York City (David Kramer, Stephen F. Gordon, and Delson & Gordon, New York City, on the brief), for respondent.

Edward Silver, New York City (G. Wallace Bates, William P. Witman, Saul G. Kramer, and Proskauer, Rose, Goetz & Mendelsohn, New York City, on the brief), for intervenor.

Louis Sherman, Elihu I. Leifer, and Sherman & Dunn, Washington, D. C., filed a brief for Building and Construction Trades Department, AFL–CIO, amicus curiae.

Before MOORE, HAYS and FEINBERG, Circuit Judges.

HAYS, Circuit Judge:

The National Labor Relations Board petitions for enforcement of its order against Local 25, International Brotherhood of Electrical Workers, AFL–CIO. The order is based upon a finding that respondent Union violated Section 8(b) (4) (i) and (ii) (B) and Section 8(b) (4) (i) and (ii) (D) of the National Labor Relations Act, 29 U.S.C. § 158(b) (4) (i) and (ii) (B) and (D).[1]

---

1. "(b) It shall be an unfair labor practice for a labor organization or its agents
* * *
(4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is
* * * * *
(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: *Provided*, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing;
* * * * *
(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining

The issue which is seriously contested by the Union is the accuracy of the result reached by the Board after a "10(k) hearing,"[2] which is a necessary preliminary to a finding of violation of Section 8(b) (4) (i) and (ii) (D).[3]

The work which is the subject of the dispute in the present case consists of pulling telephone cables into newly constructed buildings and installing the structures for telephone switching equipment and terminal boxes. The work was assigned by the New York Telephone Company to its own employees, who are represented by the Communication Workers of America, AFL–CIO. Local 25 claimed the work for the employees whom it represents and, in order to force the Telephone Company to assign the work to them, engaged in conduct which is proscribed by the Act in the absence of a favorable decision by the Board. After a hearing on the controversy in accordance with the requirements of Section 10(k) of the Act, the Board awarded the disputed work to the employees of the Telephone Company.

In NLRB v. Local Union No. 3, 339 F.2d 145, 147–148 (2d Cir. 1964), involving a factual situation quite similar to that presented in the instant case, we noted the Board's announcement[4] that in Section 10(k) cases it would consider

" 'all relevant factors' including, for example, 'the skills and work involved, certifications by the Board, company and industry practice, agreements between unions * * *, awards of arbitrators, joint boards, and the AFL–CIO in the same or related cases, the assignment made by the employer, and the efficient operation of the employer's business.' "

We gave our approval to the Board's application of its standards to the circumstances with which that case dealt.

We are strongly urged in the very able briefs of the Union and of the Building and Construction Trades Department, AFL–CIO, as amicus curiae, to reject the Board's determination here on the ground that, in reaching its decision, the Board accorded unjustifiable weight to the factor of economy and efficiency and, at the same time, failed to give proper consideration to the past practice of the parties.

It is conceded that for many years prior to 1963 the work now in dispute was regularly performed by employees who were represented by the electrical workers' union. The practice in this regard constituted a rather narrow exception to the general practice both with respect to the scope of the work involved and to the area in which the practice existed. The work which was done by the electrical workers was a comparatively brief interlude in the job as a whole, since the telephone workers prepared the material for the installation and continued the work of hooking up the telephone connections when the installation was completed. This practice was confined to the metropolitan area and was not followed in the rest of New York state. Moreover

---

representative for employees performing such work * * *."

**2.** Section 10(k) of the National Labor Relations Act, 29 U.S.C. § 160(k), provides:

"Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4) (D) of section 158(b) of this title, the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed."

**3.** See NLRB v. Radio and Television Broadcast Engineers Union, 364 U.S. 573, 81 S.Ct. 330, 5 L.Ed.2d 302 (1961).

**4.** In International Ass'n of Machinists (J. A. Jones Constr. Co.), 135 NLRB 1402, 1410–1411 (1962).

even in the area in which the practice prevailed, 90 percent of the work of this type was performed by the telephone company employees because the electrical workers did this work only on new construction or major alterations and then only where every employee working on the construction was a member of a building trades union.

This last limitation indicates the basis on which the past practice rested. At the time when it was in force, the telephone workers were either unorganized or were members of an independent union. The building trades have had a long history of refusing to work on projects on which non-union employees were at work. But since 1961 the Telephone Company employees have been represented by the Communications Workers of America, and AFL–CIO union.

The factors of economy and efficiency clearly favor the assignment of Telephone Company employees, as the Board found. The work does not require the skill possessed by the electrical workers. Telephone Company employees can be trained to accomplish the disputed tasks in only a few hours. The top rate for Telephone Company employees is $3.66 an hour whereas the electrical workers receive $5.20 an hour.

The unions argue, however, that under the provisions of the statute the Board, in making a 10(k) decision should adopt the standards applied to similar situations by the National Joint Board for the Settlement of Jurisdictional Disputes. It appears that this Joint Board gives little weight to considerations of economy and efficiency, and that past practice is usually held determinative.

While it is true that the Supreme Court in the *CBS* case [5] mentioned "joint boards" among others (including "employers") whose standards were available for use by the Board in deciding dis-

putes under Section 10(k), the Court left the final decision to the Board on the basis of "experience and common sense."

It would be surprising, indeed, to find the Board, to which is entrusted the protection of the public interest in this area as in others, completely disregarding the factors of efficiency and economy in reaching its determination as to assignment of work. Nor is there any authority for such a startling proposition as that the national labor policy, which the Board is set up to further, requires that considerations of economy and efficiency in the employment of labor be ignored.

 If, as we hold, the Board acted properly in considering the factors of efficiency and economy along with the factor of past practice, it is not for us to determine the exact weight to be accorded to each of these factors. There is nothing in the record to indicate that the Board acted arbitrarily or capriciously in reaching its conclusion. On the contrary there is evidence which sufficiently supports that conclusion. That the Board decided the case by a majority of three to two suggests that it is the kind of decision on which reasonable men can differ. We need not speculate as to whether we might not equally have approved an order awarding the work to the electricians. It is sufficient that we find no ground for rejecting the Board's determination.

 The Board has held the Union's conduct to be a violation of Section 8(b)(4)(i) and (ii)(B) as well as Section 8(b)(4)(i) and (ii)(D). As this court said in NLRB v. Local 25, International Brotherhood of Electrical Workers, 383 F.2d 449, 454 (2d Cir. 1967): "[I]t is clear that the same conduct can violate both sections at the same time, and that in such cases the Board is not restricted to one or the other."

Order enforced.

5. NLRB v. Radio & Television Broadcast Engineers Union, supra.