NATIONAL LABOR RELATIONS
BOARD, Petitioner,
v.

LOCAL UNION NO. 25, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, Respondent.

No. 295, Docket 73–1858.

United States Court of Appeals,
Second Circuit.

Argued Jan. 8, 1974.

Decided Feb. 11, 1974.

---

Edmund D. Cooke, Jr., Atty., N. L. R. B. (Peter G. Nash, Gen. Counsel; John S. Irving, Deputy Gen. Counsel; Patrick Hardin, Associate Gen. Counsel; Elliott Moore, Asst. Gen. Counsel; John D. Burgoyne and Douglas S. McDowell, Washington, D. C. (on the brief), for petitioner.

Ralph P. Katz, New York City (Delson & Gordon, Ernest Fleischman, New York City, on the brief), for respondent.

Before DANAHER, LUMBARD and TIMBERS, Circuit Judges.

DANAHER,[*] Senior Circuit Judge:

Vinyl Masters, Inc., (herein, Vinyl) in January, 1972, acquired a plant in Deer Park, Long Island, and thereafter contracted with Sparks Electric Company, Inc., (herein, Sparks) for the performance of electrical work such as the wiring of machinery, lights and transformers. Sparks placed some eleven electricians at the jobsite, all of whom with electrical foreman, Richard Deasy, were members of Respondent, Local Union No. 25, International Brotherhood of Electrical Workers, AFL–CIO (herein, Local 25). The Vinyl-Sparks contract involved some $102,000.

Thereafter Vinyl entered into a separate contract involving some $702 with Telaction Phone Corporation, (herein, Telaction), for the installation of a paging and internal communication system. When two Telaction employees appeared at the jobsite, it developed that they were non-union, and they left the premises upon learning that they had barged into a union job. Vinyl's foreman, Charles Brown, reported to his superior, Charles Clementi, that Deasy had challenged the Telaction employees who thereupon stopped their work and left the Deer Park site. Clementi, trying to clear up the impasse, talked with Deasy and with Local 25's representative, one Fisher, both of whom told Clementi that there would be no problem if Telaction's employees secured a permit from Local 25. Clementi instructed foreman Brown that if Telaction's men returned to go forward with installation of the intercom and paging system, they were not to start work unless they secured clearance from Local 25.[1]

Now, to complete the cast of characters, Telaction's Vice President Vobis, upon realizing that he could not perform the contract with non-union employees, entered into a subcontract for the per-

* Senior Circuit Judge of the District of Columbia Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

1. Administrative Law Judge Singer specifically found that he did not credit Deasy's testimony to the effect that it was not he, but it was Clementi who issued the ultimatum that the intercom job would have to be cleared through Local 25.

formance of the work, with Comtech Telephone Contractors Corporation, (herein, Comtech), which employed union members of CWA[2] Local 1156. However, when the two Comtech employees arrived at Deer Park, on August 10, 1972, Vinyl's foreman Brown told them that clearance from Local 25 was required and then brought Deasy into the conference. Deasy informed the Comtech men that a work permit from Local 25 was essential and gave them the name and telephone number of Local 25's delegate Fisher. A telephone call to Local 25's headquarters resulted only in a further assertion that a Local 25 permit was a prerequisite to Comtech's performance of work at Deer Park.

Then, CWA's representative Watkins talked with one Stafford, the business representative of Local 25, who disputed CWA's right to work, claiming that Local 25 also did installations, and added that the "inter-connecting work is IBEW work, not CWA", and if Watkins insisted on going forward, IBEW "will pull the electricians off the job".

That was the last thing Vinyl wanted. In furtherance of additional efforts by Comtech men to get on with their contract, the CWA men appeared at Deer Park and encountered Deasy. He identified himself as "shop steward for Local 25 and the foreman on the job." He insisted that "we had to get written permission from Local 25 before we could proceed to work". Deasy then turned to Brown and stated "if they do the work, I'm going to take my electricians off the job". Watkins was induced by Brown to talk with Vinyl Vice President Clementi. The latter, by this time quite aware of the warnings by Deasy and Stafford, told Watkins that the CWA men were not to continue on the job without written permission from IBEW, Local 25. The posture in which Vinyl found itself placed was not lost on Clementi who de-

cided that he could not "afford to take any chances and have them walk out on me".[3]

The CWA men, unwilling to seek a permit from Local 25, and being unable to work on the job without the Local 25 permit, left the premises. Comtech, two days later, as charging party, instituted the unfair labor practice charges here under consideration.

### I.

Although compendiously stated, the foregoing facts make sufficiently clear the background for the findings and conclusions of the administrative law judge. The Board in its "Decision and Order" affirmed. In addition to a requirement for the posting of the usual notices, the order as recommended provided that Local No. 25 shall:

> Cease and desist from threatening, coercing, or restraining Vinyl Masters, Inc., or any other person engaged in commerce or in an industry affecting commerce, where an object thereof is to force or require Vinyl Masters, Inc., or such other person, to cease doing business with Comtech Telephone Contractors Corporation or with any other person.

Although Deasy at the outset took it upon himself to challenge the two non-union Telaction workers, events mounted rapidly after Comtech's CWA members appeared. From that time on, Local 25 business agents as well as Deasy actively participated in an insistence upon preserving their claim to exclusive jurisdiction over the intercom work, even though Sparks had never been engaged to install that system. It became clear that Local 25 as an entity was aware of and participated in the secondary boycott aspect of the situation we have described. N.L.R.B. v. Local U. No. 3, Int. Bro. of Elec. Wkrs. AFL–CIO, 467 F.2d 1158, 1159–1160 (2d Cir. 1972); cf. Woodwork Manufacturers v. NLRB, 386

---

2. The Communications Workers of America had as its representative one Ted J. Watkins, administrative assistant to the vice president for District 1.

3. It seems obvious beyond peradventure that Vinyl was interested solely in getting on with a job already five months under way.

U.S. 612, 625 et seq., 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967).

■ We find ourselves satisfied that there is sufficient evidence in the record as a whole to support the finding that Local 25 has violated § 8(b)(4)(ii)(B) of the Act. N.L.R.B. v. Local Union No. 3, Internat'l Bro. of Elect. Wkrs., 339 F.2d 145, 146 (2d Cir. 1964); Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951). There is nothing in the record to indicate that the Board acted arbitrarily or capriciously in reaching its conclusion to affirm the decision of the administrative law judge. N.L.R.B. v. Local 25, International Bro. of Electrical Workers, 396 F.2d 591 (2d Cir. 1968). It fairly may be doubted that Local 25 has seriously contended to the contrary. The main thrust of the Board's action must be affirmed.

## II.

■ There remains for consideration the argument of Local 25 that the Board's order is too broad. We find no evidence on the instant record that Local 25 had engaged in a violation against the employees of any employer other than Comtech.

In a dissimilar situation to be sure but in stating a principle here applicable in light of the facts of record, the Supreme Court said:

> . . . [W]e find neither justification nor necessity for extending the coverage of the order generally by the inclusion therein of the phrase "any other employer."[4]

The Court continued:

> It would seem . . . clear that the authority conferred on the Board to restrain the practice which it has found . . . to have [been] committed is not an authority to restrain

generally all other unlawful practices which it has neither found to have been pursued nor persuasively to be related to the proven unlawful conduct (citations omitted).[5]

The Board may submit an appropriate order which will take account of our observations. The order heretofore entered by the Board will be modified by deleting "any other person", "such other person", and "with any other person". As and when so modified, the Board's order will be enforced.

---

4. Communications Workers v. N. L. R. B., 362 U.S. 479, 480, 80 S.Ct. 838, 4 L.Ed.2d 896 (1960).

5. Id., 362 U.S. 480–481, 80 S.Ct. 839–840; cf. United Brotherhood of Carpenters, Etc. v.

N. L. R. B., 286 F.2d 533, 539 (D.C.Cir. 1960), and see discussion in N. L. R. B. v. Enterprise Association, Inc., 285 F.2d 642, 646 (2d Cir. 1961), and compare N. L. R. B. v. Local U. No. 3, Int. Bro. of Elec. Wkrs., AFL–CIO, 477 F.2d 260, 268–269 (1973).