**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL UNION NO. 584, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Respondent.**

No. 937, Docket 76–4011.

United States Court of Appeals, Second Circuit.

Argued April 14, 1976.

Decided May 12, 1976.

Alan Hyde, Washington, D.C. (John S. Irving, Jr., Gen. Counsel, NLRB, John E. Higgens, Jr., Deputy Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Jay E. Shanklin, Washington, D.C., of counsel), for petitioner.

Bruce H. Simon, New York City (Cohen, Weiss and Simon, Rosalind A. Kochman, New York City, of counsel), for respondent.

Before CLARK, Associate Justice,* TIMBERS and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

In late 1972, a dispute arose between Local 584 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the Teamsters) and Local 447 of the International Association of Machinists and Aerospace Workers (the Machinists) over the assignment by the Hertz Corporation of maintenance work on non-milk trucks at its Maspeth, New York, garage.[1] Faced with threats of picketing and strikes by both unions, Hertz filed charges with the National Labor Relations Board, alleging violations of § 8(b)(4)(ii)(D) of the National Labor Relations Act (NLRA).[2]

Pursuant to § 10(k) of the NLRA (29 U.S.C. § 160(k)), a hearing was conducted by the Board for the purpose of determining which set of employees was entitled to the work in dispute. On July 23, 1974, the Board found for the Machinists.[3] *Teamsters, Local 584 (Hertz Corporation)*, 212 N.L.R.B. 532 (1974). Despite the adverse determination, the Teamsters continued to threaten Hertz with picketing and strikes, seeking the assignment of non-milk truck maintenance work to Teamster-represented employees. As a result, unfair labor practice proceedings were commenced by the

---

* Associate Justice, Retired, United States Supreme Court, sitting by designation.

1. From 1960 until 1972, this work had been continuously performed by the Teamsters. Although the Machinists admittedly raised no objection prior to 1972, they contend, as they did before the Board, that this practice was conducted without their knowledge.

2. Section 8(b)(4)(ii)(D) [29 U.S.C. § 158(b)(4)(ii)(D)] makes it an unfair labor practice for a union to threaten any person where an object thereof is to force an employer to assign particular work to employees in a particular union rather than to those in another union.

3. Most of the factors considered by the Board were found to favor neither union. No union had been certified by the Board for the jobs in question; both unions were found to possess the degree of skill necessary to perform the work, and both collective bargaining agreements contained language which could cover the disputed work. Furthermore, Hertz announced to the Board that it had no preference as to who received the work assignment. Only the fact (termed "past practice" by the Board), that Hertz, at other locations, had utilized Machinists for non-milk truck maintenance work was found to definitively favor either of the competing unions.

Board's General Counsel, and, on October 28, 1975, the Teamsters were found in violation of § 8(b)(4)(ii)(D) and ordered to cease and desist from the objectionable conduct. *Teamsters, Local 584*, 221 N.L.R.B. No. 18 (1975). The instant petition for enforcement followed.

In the case at bar, as in most enforcement proceedings based on a finding that a union has violated § 8(b)(4)(D), there is no question but that the union has committed unfair labor practices within the plain meaning of the statute. *NLRB v. Longshoremen's Local 50*, 504 F.2d 1209, 1212 (9th Cir. 1974), *cert. denied* 420 U.S. 973, 95 S.Ct. 1393, 43 L.Ed.2d 652 (1975). Since the Board's unfair labor practice complaint is predicated upon its resolution of the work assignment dispute in the 10(k) hearing, the crucial question on appeal is whether the decision therein is sustainable. *NLRB v. Longshoremen's Union*, 378 F.2d 33, 34 (9th Cir.), *cert. denied*, 389 U.S. 1004, 88 S.Ct. 562, 19 L.Ed.2d 599 (1967).

In *NLRB v. Local 25, IBEW*, 396 F.2d 591, 594 (2d Cir. 1968), we noted that the relative weight to be accorded each of the factors considered by the Board in a 10(k) proceeding is not a question for the courts so long as the Board has not acted arbitrarily or capriciously in making the work award.[4] Because we are unable to conclude that the Board herein transgressed the "arbitrary and capricious" standard as historically interpreted by this Court, *NLRB v. Local 25, IBEW, supra; NLRB v. IBEW*, 339 F.2d 145 (2d Cir. 1964), we will grant the petition for enforcement.

Although we do not deny enforcement herein, we note, nonetheless, our accord with the sentiments expressed by the Ninth Circuit in *NLRB v. Longshoremen's Local 50, supra*, 504 F.2d at 1217–21. While the Board has resolved hundreds of 10(k) disputes since the Supreme Court clarified its duty to make such determinations, *NLRB v. Radio and Television Engineers*, 364 U.S. 573, 81 S.Ct. 330, 5 L.Ed.2d 302 (1961), it has continuously decided these matters on a case-by-case basis and has, from the first, declined requests that it establish guidelines or standards for its decisions. *Machinists, Lodge 1743 (J. A. Jones Construction Co.)*, 135 N.L.R.B. 1402, 1410 (1962). The usual 10(k) opinion issued by the Board touches upon some or all of the factors announced in *Jones, supra*, most of which remain undefined, and then concludes that the decision reached was "upon the entire record", with a disclaimer of reliance on any particular factor. *See Local 50, supra*, 504 F.2d at 1213. The Board in the case at bar adhered in all respects to this standard practice.

Because of this case-by-case approach to work dispute resolutions, it is not surprising that the Board's decisions seldom, if ever, refer to or rely upon its prior determinations. As a consequence, unions and employers receive little guidance for peaceful resolution of future disputes. *See* Supplementary Report of the American Bar Association's Special 10(k) Committee, page 439 (1964). Equally disturbing, and of more immediate concern, is the effect of the Board's practice on judicial review. "As might be expected, given the uncertainty surrounding the Board's basis for decision-making, the Courts of Appeals have been reluctant to deny enforcement to Board orders stemming from § 10(k) proceedings." *Local 50, supra*, 504 F.2d at 1218.[5] The absence of standards or guidelines has made judicial review virtually impossible[6] and

---

**4.** While the Board's conclusions are subject to reversal if "arbitrary or capricious", its findings of fact must be regarded as conclusive if supported by substantial evidence. 29 U.S.C. § 160(e). Since the "substantial evidence" standard has been satisfied herein, we confine our consideration to the propriety of the Board's utilization of these findings in making its ultimate determination.

**5.** Prior to the Ninth Circuit's opinion in *Local 50*, every appellate court which had reviewed the merits of a 10(k) decision had deferred to the Board's judgment and sustained its work award. *See* the cases collected at 504 F.2d 1218 n. 3.

**6.** Nowhere is this more apparent than in the case at bar. In making its work award, the Board found "past practice" the major factor favoring the Machinists. In so doing, it relied

has reduced our role in this area to little more than that of a rubber stamp. The doctrine of limited judicial review of Board determinations was never intended to extend that far. *See Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Lorenz Schneider Co. v. NLRB,* 517 F.2d 445, 452–53 (2d Cir. 1975); *NLRB v. Bausch & Lomb Inc.,* 526 F.2d 817, 829 (2d Cir. 1975) (Friendly, *J.,* concurring and dissenting). If we are to carry out the mandate of *Universal Camera, supra,* 340 U.S. at 490, 71 S.Ct. at 465, 95 L.Ed. at 468, to assure that the Board "keeps within reasonable bounds" and to heed the Court's warning against abdication of our "conventional judicial function", it is essential that the Board clarify in each 10(k) proceeding what principles, if any, led to its determination.

■ For the reasons set forth above, we take this opportunity to join the Ninth Circuit's admonition that:

> The time has come . . . for the Board to accord a measure of weight to its past decisions and to establish some rational principles governing the weight that it gives various factors it considers in § 10(k) hearings. (504 F.2d at 1220)

The petition for enforcement is granted.

on the fact that, with the exception of the Maspeth location, Local 447 has been the sole representative of Hertz employees. Thus, the term "past practice" was implicitly defined here as the overall practice of the employer. Yet, on numerous previous occasions, "past practice" has been used by the Board in the context of the practice at the location where the controversy arose, *i.e.,* who had historically performed the specific work in dispute. *See e.g., NLRB v. Local 25, IBEW,* 396 F.2d 591, 593 (2d Cir. 1968); *NLRB v. Longshoremen's Local 50,* 504 F.2d 1209, 1213 (9th Cir. 1974), *cert. denied,* 420 U.S. 973, 95 S.Ct. 1393, 43 L.Ed.2d 652 (1975); *Teamsters, Local 5 (Grinnell Fire Protection),* 220 N.L.R.B. No. 116 (1975); *Operating Engineers, Local 66 (Brockway Glass),* 218 N.L.R.B. No. 190 (1975). Confronted by shifting definitions and an absence of predetermined guidelines, a reviewing court is hard pressed to dispute the Board's conclusion. *NLRB v. Local 50, supra,* 504 F.2d at 1220.