SHEET METAL WORKERS' INTERNA-TIONAL ASSOCIATION, AFL–CIO, et al., Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 15897.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 23, 1961.

Decided May 25, 1961.

142

Mr. Donald W. Fisher, Toledo, Ohio, for petitioner, Sheet Metal Workers' International Ass'n, AFL-CIO.

Mr. Mortimer Riemer, Cleveland, Ohio, for petitioners, Locals Nos. 65, 70 and 98, Sheet Metal Workers' International Ass'n, AFL-CIO.

Mr. Warren M. Davison, Atty., N. L. R. B., of the bar of the Supreme Judicial Court of Massachusetts, pro hac vice, by special leave of court, with whom Messrs. Stuart Rothman, Gen. Counsel, N. L. R. B., Dominick L. Manoli, Associate Gen. Counsel, N. L. R. B., Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., and Samuel M. Singer, Atty., N. L. R. B., were on the brief, for respondent.

Before EDGERTON, PRETTYMAN and BAZELON, Circuit Judges.

BAZELON, Circuit Judge.

These petitions to set aside an order of the National Labor Relations Board are brought by the Sheet Metal Workers' International Association, three of its locals, and officers and agents of each. The Board, which asks enforcement of its order, found violations of §§ 8(b) (4) (A), 8(b) (4) (B), 8(b) (4) (C), and 8(b) (2) of the National Labor Relations Act, as amended, 61 Stat. 141 (1947), 29 U.S.C.A. §§ 158 (b) (4) (A), 158(b) (4) (B), 158(b) (4) (C), and 158(b) (2).[1] These violations relate to an alleged long-standing refusal by petitioners to install the products of Burt Manufacturing Company, a maufacturer of sheet metal ventilators, because Burt's employees are not represented by the Sheet Metal Workers. During the period in ques-

1. This case is not affected by the 1959 amendments to the National Labor Re-

lations Act. 73 Stat. 542. See 29 U.S. C.A. note following § 153.

tion here, Burt was party to a collective agreement with the United Steelworkers, as the certified bargaining representative of its employees.

## I. Subsection 8(b) (4) (A).

This subsection [2] "describes and condemns specific union conduct directed to specific objectives. It forbids a union to induce employees to strike against or to refuse to handle goods for their employer when an object is to force him or another person to cease doing business with some third party. Employees must be induced; they must be induced to engage in a strike or concerted refusal; an object must be to force or require their employer or another person to cease doing business with a third person." Local 1976, United Brotherhood of Carpenters, etc. v. National Labor Relations Board, 1958, 357 U.S. 93, 98, 78 S.Ct. 1011, 1015, 2 L.Ed.2d 1186. Locals 65 and 70 against which the Board found such violations contend that there was not the requisite inducement of *employees* to engage in *concerted* action.

### A. Local 65—Mannen & Roth Company.

In October 1957, one Desch, a business agent for Local 65, visited a Mannen & Roth Company job site and questioned Albert, a foreman and a member of Local 65, as to the type of ventilators being installed. Upon discovering they were Burt ventilators, Desch told Albert not to install them until Albert heard from him. Albert immediately sent the three employees who had been installing the ventilators to work elsewhere. The next day a Mannen & Roth supervisor transferred Albert and his crew to another job site. They returned and installed the ventilators after having been so instructed by Mannen & Roth and after Albert received the "go-ahead" from Desch.

Albert testified before the trial examiner that he knew he was not supposed to install non-union equipment. The trial examiner found from this testimony that Albert acted as representative of Local 65 rather than of Mannen & Roth in ordering the stoppage of the installation of the ventilators. In upholding the trial examiner, the Board relied upon this testimony and the finding of the trial examiner as well as upon Albert's supposed obligation as a union member.

■■ Since foremen do not fall within the statutory definition of employees,[3] inducing a foreman to stop work does not violate § 8(b) (4) (A). To establish such a violation, there must be a likelihood that the foreman will act as the union's representative or conduit and transmit the inducement to employees. In Carpenters District Council, etc. v. National Labor Relations Board, 1959, 107 U.S.App.D.C. 55, 274 F.2d 564, we held that, absent evidence to the contrary, a foreman is presumed to act as representative of his employer rather than of the union of which he is a member. A Board's finding that a foreman acts for the union and contrary to his employer's interests cannot be grounded solely upon the foreman's supposed obligations as a union member. In United Brotherhood of Carpenters,

---

2. Subsection 8(b) (4) (A) reads:

"(b) It shall be an unfair labor practice for a labor organization or its agents—

\* \* \* \* \*

"(4) to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: (A) forcing or requiring any employer organization or any employer \* \* \* or other person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person \* \* \*."

3. National Labor Relations Act, as amended, 61 Stat. 137 (1947), 29 U.S. C.A. § 152(3).

etc. v. National Labor Relations Board, 1960, 109 U.S.App.D.C. 249, 286 F.2d 533, we upheld the Board's determination that the foreman acted as representative of the union where there was evidence that the foreman, on discovering that other employees on the job site were non-union, promptly quit work and urged several employees to do the same.

 The evidence relied upon by the Board in this case is not as persuasive as it was in the United Brotherhood of Carpenters case. Albert's testimony, however, was sufficient to overcome the presumption that he acted on behalf of his employer. We think it substantial evidence to support the Board's inference that Albert acted on behalf of Local 65 in bringing about the cessation of the installation of Burt ventilators. The Board's order that Local 65 cease and desist from violating § 8(b) (4) (A) will be enforced.

### B. Local 70—Wooster Sheet Metal and Roofing Co.

 In the spring of 1957, one Kenney, a business agent for Local 70, told Wetshtein, an employee of Wooster and a member of the Local, that he was not sure whether members of Local 70 should install Burt ventilators, and that Wetshtein was not to handle them until Kenney found out. The Board found that Kenney's statement to Wetshtein violated § 8(b) (4) (A).

The Local contends that the inducement of a single employee does not violate § 8(b) (4) (A). The Board inferred, however, that because Wetshtein was a union member and because the installation job was usually performed by two or more employees, Kenney's statement was intended to be transmitted to other employees called upon to install the Burt products.

In National Labor Relations Board v. Local 11, United Brotherhood of Carpenters, 6 Cir., 1957, 242 F.2d 932, the court upheld the Board's determination that the inducing of a single union steward was sufficient for an 8(b) (4) (A) violation since such an employee could reasonably be expected to transmit union instructions to his fellow employees. Although Wetshtein was not a steward, the Board's determination that he could have reasonably been expected by Kenney to transmit the union's instructions to other employees is also an allowable inference from the underlying facts in this case. That Kenney's statement did not in fact bring about concerted conduct of Wooster's employees does not preclude an 8(b) (4) (A) violation; it is sufficient that the statement to Wetshtein may be fairly characterized as an effort to bring about such action. Highway Truck Drivers and Helpers Local 107, etc. v. National Labor Relations Board, 1959, 107 U.S.App.D.C. 1, 273 F.2d 815; National Labor Relations Board v. Denver Bldg. & Const. Trades Council, 10 Cir., 1952, 193 F.2d 421. Accordingly, the Board's order finding an 8(b) (4) (A) violation by Local 70 will be enforced.

### II. Subsections 8(b) (4) (B) and 8(b) (4) (C).

When the means proscribed by § 8(b) (4) are used for the specific object of "forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees * * *," 8(b) (4) (B) is violated. Similarly, a violation of 8(b) (4) (C) occurs when § 8(b) (4) means are used for the object of "forcing or requiring any employer to recognize or bargain with a particular labor organization * * * if another labor organization has been certified as the representative of such employees. * * *"

The Board found that an object of Local 65's and Local 70's inducement of Wooster's and Mannen & Roth's employees to refuse to handle Burt products was to secure recognition by Burt of Local 70 upon the expiration of the current bargaining agreement between Burt and the Steelworkers, the certified bargaining representative. It therefore

found the Locals' conduct violative of both 8(b) (4) (B) and 8(b) (4) (C).

Petitioners assert three grounds of error: (1) these subsections of the National Labor Relations Act prohibit only the object of gaining immediate recognition, and petitioners' conduct was at the most an attempt to secure recognition at some remote future time; (2) in finding that an object of petitioners' conduct was to obtain recognition, the Board erred in relying exclusively on events occurring prior to the six-month limitation period of § 10(b); and (3) there was no evidence that petitioners' object was to compel Burt to recognize Local 70 in particular. We discuss these assertions seriatim.

■■■ (1) The Board found that petitioners' object of obtaining recognition was directed at a fixed and foreseeable future event, the expiration of the collective agreement between Burt and the Steelworkers. Petitioners contend, however, that only the object of obtaining immediate recognition is proscribed by subsections 8(b) (4) (B) and 8(b) (4) (C). We think not.

Congress' objective in enacting the "secondary boycott" provisions of subsection 8(b) (4) (A) was to protect unoffending employers and others from pressures in controversies not their own, without limiting the right of labor organizations to exert pressure on employers in primary labor disputes. National Labor Relations Board v. Denver Bldg. & Const. Trades Council, 1951, 341 U.S. 675, 692, 71 S.Ct. 943, 95 L.Ed. 1284. This appears equally to have been the objective in enacting subsection 8 (b) (4) (B). Clearly, the damage which may have been caused Mannen & Roth and Wooster by the Locals' conduct and which Congress sought to prevent is in no way lessened by the fact that the Locals' objective was to secure recognition at a foreseeable and fixed future time rather than immediately.

Subsection 8(b) (4) (C) prohibits certain "primary" as well as "secondary" activity. Insofar as "secondary" activity is concerned, we think this subsection is also designed to protect the unoffending employers from the pressures which the petitioners exerted upon them in petitioners' dispute with Burt. Furthermore, it clearly appears to us that an objective of this subsection is to insure the stability of bargaining relationships through the protection of existing certifications from coercive pressures. Certification does not terminate upon the expiration of a collective agreement, and an employer is still under a duty to bargain with the certified representative of his employees. Whether an object of the conduct in question was to gain recognition immediately or in the foreseeable future, in either case the effect of such conduct would be to undermine the relationship of Burt and the Steelworkers.

We therefore hold that the Board properly found subsections 8(b) (4) (B) and 8(b) (4) (C) to proscribe the objective of obtaining future recognition at a fixed and foreseeable time in the circumstances of this case.

■■■ (2) The proviso to § 10(b) [4] states that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board * * *." As the charge in this case was originally filed on June 5, 1957, the six-month statutory period here involved commenced on December 5, 1956. The Board's finding that an object of petitioners' conduct was to compel Burt to recognize Local 70 was based exclusively on evidence of events antedating December 5, 1956,[5] although the actual inducements occurred after that

4. National Labor Relations Act, as amended, 61 Stat. 146 (1947), 29 U.S.C.A. § 160(b).

5. These events were: (1) a letter on December 16, 1955, from Byron, the President of the Sheet Metal Workers' International to the District Director of the Steelworkers, stating that when the Steelworkers' agreement with Burt expired, "with your help we may be able to put them [Burt's employees] into our

date.[6] Petitioners contend that under the Supreme Court's decision in Local Lodge No. 1424 International Ass'n of Machinists v. National Labor Relations Board, 1960, 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832, the Board's finding may not rest solely on such evidence. There, in considering the extent to which events antedating the limitation period may be used to determine whether conduct within the period constitutes an unfair labor practice, the Court laid down the following guide lines:

"It is doubtless true that § 10(b) does not prevent all use of evidence relating to events transpiring more than six months before the filing and service of an unfair labor practice charge. However, in applying rules of evidence as to the admissibility of past events, due regard for the purposes of § 10(b) requires that two different kinds of situations be distinguished. The first is one where occurrences within the six-month limitations period in and of themselves may constitute, as a substantive matter, unfair labor practices. There, earlier events may be utilized to shed light on the true character of matters occurring within the limitations period; and for that purpose § 10(b) ordinarily does not bar such evidentiary use of anterior events. The second situation is that where conduct occurring within the limitations period can be charged to be an unfair labor practice only through reliance on an earlier unfair labor practice. There the use of the earlier unfair labor practice is not merely 'evidentiary' since it does not simply lay bare a putative current unfair labor practice. Rather, it serves to cloak

with illegality that which was otherwise lawful. And where a complaint based upon that earlier event is time-barred, to permit the event itself to be so used in effect results in reviving a legally defunct unfair labor practice." 362 U.S. at pages 416–417, 80 S.Ct. at page 826.

In this case the Board has relied upon events occurring prior to the limitation period to "shed light on the true character" of the objective of petitioners' conduct within the period. Thus, such events are "merely evidentiary." As such, they are admissible in support of charges under 8(b) (4) (B) and (C) and their probative weight is for the Board's determination. These events were not so remote in time as to rob them of probative value. Nor was there any intervening change in circumstances to undermine the Board's inference that the objective manifested by this antecedent conduct continued unchanged. Cf. National Labor Relations Board v. Local 50, Bakery and Confectionery Workers Intern. Union, 2 Cir., 1957, 245 F.2d 542. It follows that the Board's finding that an object of the Locals' conduct was to obtain recognition is supported by substantial evidence.

(3) Petitioners finally contend that, even if an object of the Locals' conduct was to obtain recognition for *some* Sheet Metal Workers local, there is no evidence that they sought recognition for *Local 70 in particular*. Assuming *arguendo* that such particularization is required by the Act, we think that it reasonably appears from the fact that Local 70 was the only Sheet Metal Workers local whose geographic jurisdiction would have entitled it to represent Burt's employees.

organization where they belong * * ";
(2) statements of Byron to Sawyer, a Burt executive, in August 1956, to the effect that the products boycott would continue until Burt recognized the Sheet Metal Workers; (3) similar statements of Carlough, a Sheet Metal Workers official, to Sawyer in October 1956; and (4) similar statements of Carlough to

Steelworkers officials and counsel in November 1956.

6. The inducement of Local 65's employees on the Mannan & Roth job site occurred in October 1957 after the original charge was filed. The charge was subsequently amended to include this conduct.

148

### III. Subsection 8(b) (2).

Subsection 8(b) (2) makes it an unfair labor practice for a labor organization or its agent "to cause or attempt to cause an employer to discriminate against an employee in violation of subsection 8(a) (3) * * *." Subsection 8(a) (3) makes it an unfair labor practice for an employer "by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization * * *." The Board found that Locals 65 and 70, through their inducement of employees to refuse to handle Burt products, and Locals 65, 70 and 98, through their appeals to sheet metal contractors to refuse to install Burt products, attempted to cause Burt not only to recognize Local 70 but also to execute a union security agreement with Local 70 at a time when it would not represent a majority of Burt's employees. Since an employer's execution of a union security agreement with a minority union is violative of subsection 8(a) (3), a majority of the Board held the Locals violated subsection 8(b) (2).

The record does not indicate that any of the petitioner Locals or the International at any time made a demand upon Burt for the execution of a collective agreement containing a union security arrangement. Nor do we think that a demand for such an arrangement necessarily follows from petitioners' attempt to represent Burt's employees upon the expiration of the agreement with the Steelworkers. The Board contends, however, that, since the Standard Form Union Agreement used by many of the Sheet Metal Workers locals contains a union security clause, this indicates that petitioners' object of obtaining recognition from Burt included the objective of obtaining a collective agreement with similar union security provisions.

The Board found that since 1950 the International's constitution has not required locals to use the Standard Form Union Agreement. Although the constitution still requires collective agreements negotiated by the locals to include "certain basic provisions," a union security arrangement is not among them. We do not think that the union security provisions of the Standard Form Union Agreement which the locals are not required to incorporate into their collective agreements is by itself substantial evidence that petitioners sought the execution of such an agreement with Burt at the future time when Burt's agreement with the Steelworkers expired. The Board's order with respect to Locals 65 and 70 will be set aside insofar as the subsection 8(b) (2) charge is concerned. Since the Board found Local 98 violated only this provision, no part of the order will run against Local 98.

### IV. The International's Responsibility.

The remaining question is whether the Board properly held the International responsible under the common-law rules of agency for the subsection 8(b) (4) unfair labor practices of Locals 65 and 70. International Ladies' Garment Workers' Union, AFL v. National Labor Relations Board, 1956, 99 U.S.App.D.C. 64, 237 F.2d 545.

The International's constitution asserts "full jurisdiction over the manufacture, fabrication [etc.] * * * of all sheet metal work made of No. Ten (10) U.S., its equivalent or lighter gauge metals * * *." The constitution further requires all collective agreements executed by the locals to contain a provision covering and providing for the protection of the jurisdictional claims. Business agents of the locals are required by the constitution to "recognize, *protect,* and be governed by the jurisdictional claims and rights of the Association as set forth * * * [in the constitution.]" Emphasis supplied.

The Board found that the jurisdictional claims had been construed and applied by the International and the locals as precluding contracting employers from using sheet metal items fabricated by anyone other than their employees or employees of another em-

ployer under contract with the Sheet Metal Workers. The contract of Local 65 with Mannen & Roth and that of Local 70 with Wooster contained provisions so interpreted by the Locals. The contracts, the International's constitution, and the construction given them by the International and the Locals provide substantial evidence in support of the Board's finding that the Locals and their business agents were authorized and required by the International not only to include in their collective agreements provisions which they interpreted as prohibiting the installation of non-union goods but also to enforce such provisions. Substantial evidence also supports the Board's finding that the International authorized the enforcement of these provisions with the objective of compelling Burt to recognize Local 70 upon the expiration of Burt's agreement with the Steelworkers.

The International in effect concedes all this but contends that it cannot be held responsible for the Locals' conduct because, as the record affirmatively establishes, it ordered the Locals not to pursue these objectives by means of inducing employees to refuse to handle Burt's products. A principal is not, however, as a matter of law excused from responsibility for his agent's conduct within the general scope of his authority by the fact that the principal has forbidden the use of specific acts by the agent in carrying out the authority. National Labor Relations Board v. International Longshoremen's and Warehousemen's Union, 9 Cir., 1960, 283 F.2d 558, 565; Restatement (Second), Agency § 230 (1958).

Our recent decision in the United Brotherhood of Carpenters case, supra, is not to the contrary. In that case we refused to accept "the Board's implicit assumption that approval of the [locals' trade] rules [by the International] extends to their enforcement by illegal means or for an illegal purpose."[7] There was no finding, as there is here, that the

locals and their business agents were authorized by the International to carry out a policy of the International. Consequently we required specific authorization or ratification of the means and objectives of the locals by the International. That is not requisite here. The Board's order will be enforced against the International insofar as enforced against Locals 65 and 70.

Order set aside in part and in all other respects will be enforced.

---

7. 109 U.S.App.D.C. at page 254, 286 F. 2d at page 538.