455 F.2d 1248
 79 L.R.R.M. (BNA) 2705, 31 A.L.R.Fed. 719,
67 Lab.Cas. P 12,472
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
UNION de EMPLEADOS de la INDUSTRIA del ENLATADO de PESCADO y
RAMAS ANEXAS de P. R. and its agent Domingo Rivera
Rosado, Respondents.
 No. 71-1295.
 United States Court of Appeals,
First Circuit.
 Argued Feb. 1, 1972.
Decided March 3, 1972.
 
 Glen M. Bendixsen, Chief of Special Litigation, Washington, D. C., with whom Peter G. Nash, General Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Ronald I. Tish, Washington, D. C., Attorney, were on the brief, for petitioner.
 George L. Weasler, Santurce, P. R., with whom Pedro E. Purcell Ruiz, Santurce, P. R., was on the brief for respondents.
 Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.
 COFFIN, Circuit Judge.
 
 
 1
 This case is before us on an application by the National Labor Relations Board, pursuant to Sec. 10(e) of the National Labor Relations Act, 29 U.S.C. Sec. 160(e), for enforcement of an order directed against the respondents Union de Empleados de la Industria del Entelado de Pescado y Ramas Anexas de Puerto Rico ("the Independent") and Domingo Rivera Rosado, its president. The order was based upon a finding that the respondents had committed an unfair labor practice in violation of Sec. 8(b) (4) (i) and (ii) (C) of the Act, 29 U.S.C. Sec. 158(b) (4) (i) and (ii) (C), by "engaging in a strike at the [National Packing] Company's plant, thereby inducing employees not to perform services and coercing the Company, with an object of forcing the Company to recognize and bargain with the Independent Union even though the [Seafarers International Union de Puerto Rico ("the SIU")] was the certified bargaining representative of the employees. . . ." The Independent admits what is in any event obvious, that it induced the employees of National Packing to engage in a strike and thereby coerced National Packing, and that the SIU was at that time and remains the certified bargaining representative. The critical issue is whether "an object" of the strike was "forcing or requiring" National Packing to "recognize or bargain with" the Independent.[1]
 
 
 2
 We begin with a brief chronology of the tripartite dispute. The SIU was certified on October 27, 1967, after a representation election, as the exclusive bargaining representative for the employees of National Packing at its Ponce, Puerto Rico, fish processing plant. Respondent Rivera was then its business agent. The SIU and National Packing then entered into a collective bargaining agreement, with a union shop provision, to be in effect from December 1, 1967, to November 30, 1970. After Rivera was dismissed as business agent by the SIU on February 9, 1970, some members of the bargaining unit went on strike to protest the dismissal, and thereby secured his reinstatement.[2] When he was again dismissed, no further striking ensued. On March 29, the Independent was formed, with Rivera as president. On the following day, in an election conducted by the NLRB under Sec. 9(e) of the Act, 29 U.S.C. Sec. 159(e), the members of the bargaining unit voted overwhelmingly to revoke SIU's authority to require union membership as a condition of employment. Thereafter, through the summer, Rivera dealt frequently with officials of the company in matters detailed below.
 
 
 3
 Having garnered six hundred authorization cards from a bargaining unit comprising eight hundred employees, the Independent filed a petition for a representation election under Sec. 9(c) (1) of the Act, 29 U.S.C. Sec. 159(c) (1), on September 15. On September 30, the SIU filed unfair labor practice "blocking charges" against National Packing, alleging that National Packing's practice of dealing with Rivera rather than with the SIU violated Sec. 8(a) (1), (2), and (5) of the Act, 29 U.S.C. Sec. 158(a) (1), (2), and (5). When, on October 30, Rivera visited the NLRB's regional office to ascertain the status of the Independent's election petition, he was told that, in accordance with NLRB policy, the "blocking charges" were being processed before the election petition so that any unfairness to the SIU could be determined and dissipated before an election was ordered.
 
 
 4
 On October 31, the Independent called the strike which is the substance of the unfair labor practice charge now before us. On November 9, the NLRB dismissed the Independent's election petition and, on November 13, approved a settlement between the SIU and National Packing of the SIU's "blocking charges" while reaffirming its dismissal of the Independent's election petition.
 
 
 5
 Meanwhile, on November 4, the SIU, and on November 13, National Packing, filed the present charges against the Independent. The strike continued until the district court granted a temporary restraining order on November 25, pending consideration of a petition by the Regional Director of the NLRB for an injunction under Sec. 10(l) of the Act, 29 U.S.C. Sec. 160(l). After a hearing, however, the district court declined to issue the requested injunction, holding that the Regional Director did not have "reasonable cause to believe" that a violation of Sec. 8(b) (4) (i) and (ii) (C) had occurred. Cannella v. Union de Empleados, 77 LRRM 3068 (D.P.R. Dec. 14, 1970).
 
 
 6
 By stipulation of the parties, the record of the hearing held before the district court became the record for plenary consideration by the NLRB of the unfair labor practice charges. On this record, the trial examiner found that an unfair labor practice had been committed and issued a remedial order. The NLRB modified the order in minor respects, and affirmed the order as modified. The NLRB having adjudicated the unfair labor practice charges, its appeal to this court from the denial of the Sec. 10(l) injunction was dismissed, the judgment of the district court was vacated, and the district court was directed to dismiss the case as moot. The NLRB then brought the present petition for enforcement.
 
 
 7
 Our function on this petition for enforcement is to determine whether the NLRB's finding of a recognitional object is supported by substantial evidence. The Independent's purported motivation for striking, as reflected in the legends of its picket signs and the contemporaneous statements of its president, is a convenient starting point.[3] The picket signs bore the legends "we don't want violence", "We want justice", "We want elections", and "We don't want the SIU". The first and second of these express unexceptionable but irrelevant sentiments. The legend "We want elections" is self-explanatory. More difficult to interpret is "We don't want the SIU", which can fairly be thought either to demand an NLRB election in which the strikers would reject the SIU, or to demand that the company recognize an other union than the SIU. The clear implication of the latter interpretation is that National Packing recognize the Independent. While the record does not indicate that the picket signs carried the name of the Independent, the circumstances of the strike, even without the history of the relationship between National Packing and the Independent, make it clear beyond question that both the employees and the company knew that the Independent had instigated the strike and was the intended replacement for the SIU. In particular, as one National Packing employee testified, Rivera utilized the radio to address the employees during the strike, on some occasions detailing a history of "the movement they call the Independent Union".
 
 
 8
 One interpretation of one of the picket signs, then, supports the NLRB's finding, but this is indeed a weak reed. Nor is the finding bolstered by the rest of the radio broadcasts, which, according to the sketchy testimony, seem to have reiterated the theme that the Independent would be victorious in an election, without indicating that no election had been ordered or could be ordered except by the NLRB. On the other hand, as the NLRB argues, the Independent's explanation, that its motivation was to pressure the NLRB to act quickly on its election petition, seems implausible. The theory that the Independent sought to bring indirect pressure on the NLRB is undercut by the absence in the record of any effort to focus the strike on NLRB inaction either through concurrent picketing of the NLRB local office or through explicit radio commentary. But the existence or not of a motive to influence the NLRB is, strictly, beside the point. The Independent bears no burden of supporting its explanation in the record, nor, in establishing that "an object" of the strike was recognitional, need the NLRB negative all other motivations.
 
 
 9
 More helpful in assessing the substantiality of the evidence of recognitional object is the prior relationship of the parties. Donald Baldwin, general manager of National Packing, testified that from June until "approximately a month ago" (October of 1970), on "numerous occasions, almost every day, [Rivera] was in my office". Many of the meetings were, according to Baldwin's testimony, concerned with adjusting emtimes", Rivera called upon him "to negotiate a collective bargaining agreement . . . pertaining to all the departments of National Packing Company". Rivera testified at the hearing, but did not contradict Baldwin's assertions. There is, then, evidence in the record indicating that prior to the strike, Rivera sought to have the company bargain with and recognize the Independent. Nor was there an intervening change in circumstances after Rivera's statements to render them unrelated to the strike. See Sheet Metal Workers Int'l Ass'n v. N.L.R.B., 110 U.S.App.D.C. 302, 293 F.2d 141, 147, cert. denied, 368 U.S. 896, 82 S.Ct. 172, 7 L.Ed.2d 92 (1961).
 
 
 10
 In considering a union's motivation for striking or picketing, courts have found it useful to ask what concessions the company would have to make to abate the union activity. See, e. g., N.L.R.B. v. Denver Bldg. & Constr. Trades Council, 341 U.S. 675, 688, 71 S.Ct. 943, 95 L.Ed. 1284 (1951); N.L.R.B. v. Local 182, Intern. Brotherhood of Teamsters, etc., 314 F.2d 53, 58 (2d Cir. 1963). In the present case, the union did not indicate to the company any step which it might take to end the strike, and certainly did not pledge to end the strike if the company requested the NLRB to expedite the election petition. Consequently, National Packing could quite reasonably believe, and the NLRB find, that in view of Rivera's prior statements, only recognition of or bargaining with the Independent would bring the strikers back to work. In short, while this is a close case, we conclude that the record contains substantial evidence that an object of the strike was to force the company to bargain with or recognize the Independent.
 
 
 11
 Respondents raise a number of collateral matters, including the propriety of the NLRB's "blocking charges" policy, failure to notify the Independent before approving the settlement of the SIU's "blocking charges" against National Packing, and denial of the Indeployee grievances. Additionally, "many pendent's election petition. Even if meritorious, however, none of these contentions is a defense to the present unfair labor practice charge.
 
 
 12
 The order will be enforced.
 
 
 
 [1]
 In relevant part, 29 U.S.C. Sec. 8(b) (4) makes it an unfair labor practice for a labor organization
 "(i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce . . . to engage in, a strike . . .; or (ii) to threaten, coerce, or restrain any person engaged in commerce . . ., where in either case an object thereof is--
 (C) forcing or requiring any employer to recognize or bargain with a particular labor organization as the representative of his employees if another labor organization has been certified as the representative of such employees under the provisions of section 159 of this title . . . ."
 
 
 [2]
 On February 13, during the strike, National Packing brought unfair labor practice charges against Rivera and his associates. These charges were dismissed by the NLRB on the ground, among others, that "there was insufficient evidence to establish that [the strikers] had constituted themselves an independent labor organization . . . ."
 
 
 [3]
 We are not, of course, bound to accept at face value the stated purposes of the strike as indicated by the legends on the picket signs. N.L.R.B. v. Knitgoods Workers Local 155, 403 F.2d 388, 390-391 (2d Cir. 1968)