Thomas C. HENDRIX, Regional Director of the Seventeenth Region of the National Labor Relations Board, For and On Behalf of the NATIONAL LABOR RELATIONS BOARD, Appellee,

v.

INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 571, Appellant.

No. 78–1376.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 17, 1978.

Decided Feb. 7, 1979.

438

David D. Weinberg of Weinberg & Weinberg, Omaha, Neb., for appellant.

Joseph G. Metscher, Atty., N. L. R. B., Washington, D. C., argued, John S. Irving, Gen. Counsel, John E. Higgins, Deputy Gen. Counsel, Harold J. Datz, Associate Gen. Counsel, Joseph E. Mayer, Asst. Gen. Counsel, and John W. Hornbeck, Washington, D. C., on brief, for appellee.

Before STEPHENSON and McMILLIAN, Circuit Judges, and ROBINSON,* Senior District Judge.

RICHARD E. ROBINSON, Senior District Judge.

This case is an appeal from the issuance of a Preliminary Injunction by the District Court [1] pursuant to § 10(l) of the National Labor Relations Act, 29 U.S.C. § 160(l). After a careful review of the record and the law, we find the issuance of the preliminary injunction was not clearly erroneous. Accordingly, we affirm. However, as hereinafter explained, we remand the case for the purpose of limiting the scope of the injunctive order.

The employer, J. E. D. Construction Co. [hereinafter J. E. D.] is a masonry contractor in Lincoln, Nebraska. Its employees are represented by Laborers International Union of North America, Local 1140, AFL–CIO [hereinafter Laborers Local 1140]. The defendant, International Union of Operating Engineers Local 571, AFL–CIO [hereinafter Local 571 or Union], is a union of forklift operators in the Lincoln, Nebraska area. Local 571 has never been certified by the National Labor Relations Board [hereinafter the Board or NLRB] as the collective bargaining representative of J. E.

---

* The Honorable Richard E. Robinson, United States Senior District Judge for the District of Nebraska, sitting by designation.

1. The Honorable Warren Urbom, Chief Judge, United States District Court for the District of Nebraska.

D.'s employees, nor has J. E. D. recognized Local 571 as the bargaining agent of its employees.

In the course of its masonry operations, J. E. D. uses forklift at the construction site. The operation of the machines is normally assigned to members of Laborers Local 1140, but members of Local 571 have operated the machines on occasion.[2] In 1969 J. E. D. entered into two "Participation Agreements" with Local 571, whereby J. E. D. contributed a sum of money to a pension fund and a Health and Welfare fund for each hour of work done by members of Local 571 on J. E. D.'s forklift assignments.

In 1975 the general contractor at the Animal Research Project construction site requested that J. E. D. assign the forklift operations to members of Local 571 "to keep problems off the job." Since no Local 571 member was available, Local 571 issued a work permit to J. E. D. Pursuant to the permit, J. E. D. paid Local 571 a fee and assigned the forklift operations to a member of Laborers Local 1140, who was paid the higher Local 571 operator's wage.

On April 1, 1976, J. E. D. entered into a collective bargaining agreement with Laborers Local 1140 and cancelled the said work permit with Local 571. Thereafter all forklift assignments were assigned to members of Laborers Local 1140. In a letter to J. E. D. the business agent for Local 571 disputed the work permit cancellation and forklift assignment to Laborers Local 1140. In May, 1976, Local 571 filed a jurisdictional work assignment complaint with the Impartial Jurisdictional Disputes Board in which it challenged J. E. D.'s forklift assignment to Laborers Local 1140 at the University of Nebraska job site and requested the reassignment of the forklift operations to Local 571. The Disputes Board notified J. E. D. of the complaint and the possibility of a violation of the procedural rules of the Disputes Board. J. E. D. denied the allegations and contended that the Disputes Board lacked jurisdiction over J. E. D. No further action followed.

In July, 1976, Local 571 requested payroll and other information from J. E. D. for collective bargaining and representation purposes. J. E. D. denied it had a collective bargaining agreement with Local 571 and repudiated the 1969 "Participation Agreements" because the forklift operations were assigned to Laborers Local 1140 pursuant to the collective bargaining agreement with J. E. D. Later in the year, Local 571 requested J. E. D. to attend a multi-employer meeting to negotiate changes in Local 571's "Building Agreement for Lancaster County, Nebraska." J. E. D. did not respond.

Local 571 filed a second jurisdictional work assignment complaint with the Disputes Board in July, 1977, in which it challenged J. E. D.'s forklift assignment to Laborers Local 1140 at the Millard warehouse job site. The Disputes Board notified J. E. D., which denied the allegations and the Disputes Board's authority over J. E. D.'s operations. Again, no further action followed.

In August, 1977, Local 571 advised J. E. D. by letter that although it did not purport to represent J. E. D.'s employees, it protested that the wage scale J. E. D. paid its employees who operated the forklift was below area standards. However, the Union did not protest the assignment of the forklift operations to the Laborers Local 1140.

In December, 1977, J. E. D. assigned forklift operations at the Southeast Community College work site to Laborers Local 1140. Due to inclement weather conditions, the forklift was used infrequently during the winter months. On March 10, 1978, continuous operation of the forklift resumed. Eleven days later Local 571 began picketing J. E. D. at the work site. The purpose of the picketing was allegedly to protest the lower wage scale paid by J. E. D. to members of Laborers Local 1140 who operated the forklift. As a consequence of the picketing, work on the construction site was curtailed.

**2.** During the period from 1969 to 1978, Local 571 members operated the forklift on 8 or 9 of the 200 jobs performed by J. E. D., in the Lincoln, Nebraska area, *Appendix for Appellant* p. 35.

On March 22, 1978, J. E. D. filed a complaint with the Regional Director of the NLRB. After its investigation, the NLRB, through the Regional Director, petitioned the District Court on April 5, 1978, for a Preliminary Injunction pursuant to § 10(*l*) of the National Labor Relations Act. 29 U.S.C. § 160(*l*). The NLRB alleged it had reasonable cause to believe the purpose of the picketing by Local 571 was to force J. E. D. to assign the forklift operations to members of Local 571, which was an unfair labor practice within the meaning of § 8(b)(4)(i)(ii)(D). 29 U.S.C. § 158(b)(4)(i)(ii)(D).[3] The NLRB sought to enjoin further picketing by the Union for jurisdictional purposes until the final disposition by the NLRB of J. E. D.'s unfair labor practice complaint.

After an evidentiary hearing on April 21, 1978, the District Court found the factual allegations were substantial and the legal question was one of first impression, substantial and non-frivolous. Accordingly, the District Court concluded that the NLRB had reasonable cause to believe the picketing was an unfair labor practice and issued a Preliminary Injunction pursuant to § 10(*l*).

On April 18, 1978, the NLRB held a § 10(k), 29 U.S.C. § 160(k),[4] hearing to determine which Union was entitled to the forklift assignments. The Hearing Officer concluded that the Laborers Local 1140 was entitled to the assignments at J. E. D.'s present and future job sites in the Lincoln, Nebraska, area where the jurisdiction of the two unions coincided. On August 28, 1978, a Three Member Panel of the NLRB affirmed the decision of the Hearing Officer. *International Union of Operating Engineers Local 571, AFL–CIO and J. E. D. Construction Co., Inc. and Laborers International Union of North America, Local 1140, AFL–CIO*, 237 NLRB No. 125 (August 28, 1978).

The Norris-LaGuardia Act, 29 U.S.C. §§ 101–115, removed the jurisdiction of the

---

**3.** (b) It shall be an unfair labor practice for a labor organization or its agents—

(4)(i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work:

Provided, That nothing contained in this subsection shall be construed to make unlawful a refusal by any person to enter upon the premises of any employer (other than his own employer), if the employees of such employer are engaged in a strike ratified or approved by a representative of such employees whom such employer is required to recognize under this sub-chapter: Provided further, That for the purposes of this paragraph (4) only, nothing contained in such paragraph shall be construed to prohibit publicity, other than picketing, for the purpose of truthfully advising the public, including consumers and members of a labor organization, that a product or products are produced by an employer with whom the labor organization has a primary dispute and are distributed by another employer, as long as such publicity does not have an effect of inducing any individual employed by any person other than the primary employer in the course of his employment to refuse to pick up, deliver, or transport any goods, or not to perform any services, at the establishment of the employer engaged in such distribution;

29 U.S.C. § 158(b)(4)(i)(ii)(D).

**4.** Section 10(k) provides in relevant part:

Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(D) of section 158(b) of this title, the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed.

29 U.S.C. § 160(k).

Federal Courts to grant injunctive relief in labor disputes. 29 U.S.C. § 101.[5] When Congress enacted the Taft-Hartley Act in 1947, 29 U.S.C. §§ 141–197, "it believed Norris-LaGuardia to be so broad that certain of the new provisions of section 8(b), creating union unfair labor practices, would be rendered nullities without some use of the injunctive process." *McLeod v. Bus. Mach. and Off. App. Mech. Conf. Bd., Local 459*, 300 F.2d 237, 240 (2d Cir. 1962). Further the crippling and destructive effects on commerce of the Section 8(b) unfair labor practices made time of the essence in enforcement proceedings.[6] In addition,

> [t]he relatively slow procedures of Board hearings and orders, followed many months later by an enforcing decree of the Circuit Court of Appeals, falls short of achieving the desired obligations of the prompt elimination of the obstacles to the free flow of commerce and encouragement of the practice and procedure of free and private collective bargaining.

*Sen.Rep.No.105, 80th Cong., 1st Sess. 7–8, reprinted in I NLRB, Legislative History of the Labor Management Relations Act, 1947,* at 433 (1948). *See Muniz v. Hoffman,* 422 U.S. 454, 466–67, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975); *Dawidoff v. Minn. Bldg. and Const. T. C.,* 550 F.2d 407, 412 (8th Cir. 1977).[7] The solution of this dilemma was further complicated by the underlying Congressional intent in the Labor Act that the NLRB make the primary findings of fact and interpretations of the statutory scheme of the Labor Act.[8] *Squillacote v. Inter. Broth. of Teamsters, Local 344,* 561 F.2d 31, 33–35 (7th Cir. 1977); *Dawidoff v. Minn. Bldg. and Const. T. C., supra,* 550 F.2d at 412–13; *McLeod v. Natl. Maritime Union of America, AFL–CIO,* 457 F.2d 490, 494 (2d Cir. 1972).

Congress resolved these various considerations by enacting Section 10(*l*). 29 U.S.C. § 160(*l*).[9] In order to insure prompt and

---

5. *See Milk Wagon Drivers' Union, Local 753 v. Lake Valley Farm Products, Inc.,* 311 U.S. 91, 100–101, 61 S.Ct. 122, 85 L.Ed. 63 (1940).

6. Because of the nature of certain of the practices, especially jurisdictional disputes, and secondary boycotts and strikes for specifically defined objectives, the committee is convinced that additional procedures must be made available under the National Labor Relations Act in order adequately to protect the public welfare which is inextricably involved in labor disputes.

   *Sen.Rep.No.105, 80th Cong., 1st Sess. 8, reprinted in I NLRB, Legislative History of the Labor Management Relations Act, 1947,* at 414, 433 (1948).

7. *See, e. g., Squillacote v. Inter. Broth. of Teamsters, Local 344,* 561 F.2d 31, 35 (7th Cir. 1977); *Hoffman v. Beer Drivers and Salesmen's Local Union No. 888,* 536 F.2d 1268, 1276 (9th Cir. 1976); *Squillacote v. Local 248, Meat and Allied Food Wkrs.,* 534 F.2d 735, 741–42 (7th Cir. 1976); *Eisenberg v. Hartz Mt. Corp.,* 519 F.2d 138, 141 n.2 (3d Cir. 1975); *Squillacote v. Graphic Arts Inter. Union, Local 277,* 513 F.2d 1017, 1020–21 (7th Cir. 1975).

8. [I]t is axiomatic that the Board should be accorded the opportunity to pass initially on questions involving the construction of the N.L.R.A. Where the legal questions resolve around the substantive validity of unfair labor practice theories, it is particularly important that the courts make every effort to have the Board pass on the legal merits first.

*Boire v. Inter. Broth. of Teamsters,* 479 F.2d 778, 789 (5th Cir. 1973).

9. § 10(*l*) provides in relevant part:

   (*l*) Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(A), (B), or (C) of section 158(b) of this title, or section 158(e) of this title or section 158(b)(7) of this title, the preliminary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law . . . .. In situations where such relief is appropriate the procedure specified herein shall apply to charges with respect to section 158(b)(4)(D) of this title.

effective action, Section 10(*l*) empowers the Federal District Courts to issue appropriate injunctive relief when it finds reasonable cause to believe that an unfair labor practice occurred. The injunction preserves the status quo pending a full and final adjudication by the Board of the unfair labor practice charges. *Sears, Roebuck & Co. v. Carpet Linoleum, Soft Tile & Resilient Floor Covering Layers Local Union 419, AFL–CIO,* 397 U.S. 655, 658–59, 90 S.Ct. 1299, 25 L.Ed.2d 637 (1970); *Kaynard v. Local 282 Inter. Broth. of Teamsters,* 576 F.2d 471, 479 (2d Cir. 1978); *Hirsch v. Bldg. and Const. T. C.,* 530 F.2d 298, 302 (3d Cir. 1976); *NLRB v. Queen Mary Rest. Corp.,* 522 F.2d 6, 7 (9th Cir. 1975). In addition, the section 10(*l*) injunction forestalls the use of economic coercion to resolve the labor dispute and preserves the Board's jurisdiction so that the ultimate decision of the Board will not be negated, nullified or rendered moot by the intervening events.[10] *Compton v. Nat. Maritime Union of America, AFL–CIO,* 533 F.2d 1270, 1276 (1st Cir. 1976); *Squillacote v. Graphic Arts Inter. Union, Local 277, supra,* 513 F.2d at 1020; *Samoff v. Bldg. and Const. T. C.,* 475 F.2d 203, 207 n.6 (3d Cir. 1973). *See also Dawidoff v. Minn. Bldg. and Const. T. C., supra,* 550 F.2d at 412; *Hirsch v. Bldg. and Const. T. C., supra,* 530 F.2d at 302.

The decision making process of the District Court in a Section 10(*l*) injunction proceeding is twofold. In the first instance the District Court is not called upon to decide whether an unfair labor practice occurred, but rather, after deferring to the statutory interpretation and rational factual inferences of the Board, *Danielson v. Inter. Organ. of Masters, Mates and Pilots, AFL–CIO,* 521 F.2d 747, 751 (2d Cir. 1975); *Squillacote v. Graphic Arts Inter. Union, Local 277, supra,* 540 F.2d at 858, the district court must decide whether there is reasonable cause [11] to believe that an unfair practice occurred. *Dawidoff v. Minn. Bldg. & Const. T. C., supra,* 550 F.2d at 410–11; *Wilson v. Milk Drivers and Dairy Employees Union, Local 471,* 491 F.2d 200, 203 (8th Cir. 1974); *Local Joint Bd., Hotel & Rest. Employees and Bartenders Inter. Union v. Sperry,* 323 F.2d 75, 77–78 (8th Cir. 1963). In addition the District Court must be satisfied the legal issues are "substantial and non-frivolous." *Local Joint Bd., Hotel & Rest. Employees and Bartenders Inter. Union v. Sperry, supra,* 323 F.2d at 77–78.[12] Since the Board must establish only the substantiality of the legal

---

**10.** Experience under the National Labor Relations Act has demonstrated that by reason of lengthy hearings and litigation enforcing its orders, the Board has not been able in some instances to correct unfair labor practices until after substantial injury has been done. Under the present act the Board is empowered to seek interim relief only after it has filed in the appropriate circuit court of appeals its order and the record on which it is based. Since the Board's orders are not self-enforcing, it has sometimes been possible for persons violating the act to accomplish their unlawful objective before being placed under any legal restraint and thereby to make it impossible or not feasible to restore or preserve the status quo pending litigation.

*Minn. Mining & Mfg. Co. v. Meter,* 385 F.2d 265, 270 (8th Cir. 1967) *quoting Sen.Rep.No.* 105, 80th Cong., 1st Sess., *I NLRB, Legislative History of the Labor Management Relations Act, 1947,* at 433 (1948).

**11.** The statutory standard of "reasonable cause" is satisfied if there is a showing of factual issues which must be resolved by the Board. Section 10(1) commands the courts

to disregard their traditional reluctance to issue preliminary injunctions when there is a substantial conflict in the evidence.

*Wilson v. Milk Drivers and Dairy Employees, Local 471,* 491 F.2d 200, 203 (8th Cir. 1974), *quoting Kennedy v. Sheet Metal Workers Inter. Assn. Local 108,* 289 F.Supp. 65, 91 (D.C.C.D. Cal.1968).

The Second and Fourth Circuits, in apparent disagreement with this and other Circuits, hold that reasonable cause requires that the Board show "at least some significant (or reasonable) possibility that the Board will (ultimately) enter an enforceable order." *Danielson v. Joint Bd. of Coat, Suit and Allied Garment Workers Union, ILGWU,* 494 F.2d 1230, 1244–45 (2d Cir. 1974); *Humphrey v. Inter. Longshoreman's Assn., AFL–CIO,* 548 F.2d 494, 497–98 (4th Cir. 1977).

**12.** *See Squillacote v. Inter. Broth. Teamsters, Local 344,* 561 F.2d 31, 33–34 (7th Cir. 1977); *Hirsch v. Bldg. and Const. T. C.,* 530 F.2d 298, 302 (3d Cir. 1976); *Boire v. Inter. Broth. of Teamsters,* 479 F.2d 778, 789–92 (5th Cir. 1973).

theory and not its ultimate validity, a novel or untested legal theory is not necessarily non-substantial. *Squillacote v. Graphic Arts Inter. Union, AFL–CIO, supra,* 540 F.2d at 859; *Eisenberg v. Hartz Mtn. Corp.,* 519 F.2d 138, 141 n.2 (3d Cir. 1975); *Hirsch v. Bldg. and Const. T. C. of Phil., supra,* 530 F.2d at 302; *Boire v. Inter. Broth. of Teamsters,* 479 F.2d 778, 789 (5th Cir. 1973) (10(j) proceeding).[13]

In the second instance, if the District Court finds reasonable cause to believe that an unfair labor practice occurred, it must then decide whether equitable relief is "just and proper." In addition to the usual discretionary considerations, the district court must consider whether the statutory purpose of the Section 10(*l*) remedy would be frustrated if injunctive relief was denied. *Wilson v. Milk Drivers and Dairy Employees Union, supra,* 491 F.2d at 203; *Minn. Mining and Mfg. Co. v. Meter,* 385 F.2d 265, 270–72 (8th Cir. 1967).

The scope of appellate review of a Section 10(*l*) proceeding

> is limited to a determination of whether the trial court's finding that there is reasonable cause to believe that a violation of the Act charged has been committed is clearly erroneous and whether the trial court abused its discretion in granting injunctive relief.

*Local Joint Bd. Hotel and Rest. Employees and Bartenders Union v. Sperry, supra,* 323 F.2d at 77. *See Dawidoff v. Minn. Bldg. and T. C., supra,* 550 F.2d at 412.

**13.** In a § 10(j) case, where the General Counsel's legal theories are substantial, even if 'untested' or 'novel,' the most appropriate disposition is to do what the District Court did here—decide whether the injunction was necessary to preserve the Board's jurisdiction, whether it was equitably proper to grant relief, and then if both questions are answered in the affirmative, issue the injunction.

This 'non-active' approach is followed by most, if not all of the Circuits . . . . *Boire v. Inter. Broth. of Teamsters,* 479 F.2d 778, 789 (5th Cir. 1973).

**14.** Section 10(b) provides in relevant part:

(b) Whenever it is charged that any person has engaged in or is engaging in any such

■ The undisputed facts of this case establish a history of disagreement between J. E. D. and Local 571 about the work assignment of the forklift operations. The Union's letters to J. E. D. and complaints to the Impartial Jurisdictional Disputes Board demonstrate the Union's claim of the forklift operations for its members. Although the Union claimed it had abandoned this dispute, the District Court found that the Union's primary motivation for the March 21, 1978, picketing was the Union's continuing demand for the forklift assignments and not solely a demand for adherence to area wage standards. After a thorough review of the record, we cannot say the District Court's finding of reasonable cause is clearly erroneous.

■ However, the resolution of the reasonable cause question does not end our task, since the Union contends that, in view of Section 10(b),[14] it was reversible error for the District Court to receive and consider the evidence of events which occurred prior to the six month period preceding the March 21, 1978, picketing. The dispositive nature of this issue was noted by District Court:

> I conclude that the only evidence of acts occurring within the six-month period is insufficient to support a determination of reasonable cause to believe that the charge is true, but that if evidence of acts which occurred during the months immediately preceding the six-month limitations period is considered, the reasonable cause determination is supportable.

unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, not less than five days after the serving of said complaint: Provided, That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board

. . . .

29 U.S.C. § 160(b).

The leading case construing Section 10(b) is *Local Lodge No. 1424, Inter. Assn. of Machinists, AFL–CIO v. NLRB*, 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960), in which the Supreme Court recognized two distinguishable circumstances when applying rules of evidence as to the admissibility of past events.

It is doubtless true that § 10(b) does not prevent all use of evidence relating to events transpiring more than six months before the filing and service of an unfair labor practice charge. However, in applying rules of evidence as to the admissibility of past events, due regard for the purposes of § 10(b) requires that two different kinds of situations be distinguished. The first is one where occurrences within the six-month limitations period in and of themselves may constitute, as a substantive matter, unfair labor practices. There, earlier events may be utilized to shed light on the true character of matters occurring within the limitations period; and for that purpose § 10(b) ordinarily does not bar such evidentiary use of anterior events. The second situation is that where conduct occurring within the limitations period can be charged to be an unfair labor practice only through reliance on an earlier unfair labor practice. There the use of the earlier unfair labor practice is not merely 'evidentiary,' since it does not simply lay bare a putative current unfair labor practice. Rather, it serves to cloak with illegality that which was otherwise lawful. And where a complaint based upon that earlier event is time-barred, to permit the event itself to be so used in effect results in reviving a legally defunct unfair labor practice.

363 U.S. at 416–17, 80 S.Ct. at 826.

The consideration of events outside the six-month period depends upon the gravamen of the unfair labor practice complaint.

*Machinist Local 1424, supra*, 362 U.S. at 419–420, 80 S.Ct. 822; *NLRB v. Auto Warehousers, Inc.*, 571 F.2d 860, 863–64 (5th Cir. 1978); *NLRB v. R. L. Sweet Lumber Co.*, 515 F.2d 785, 790–92 (10th Cir. 1975). If the Trial Court merely uses the anterior events in an evidentiary or background manner, the consideration of the events is proper. If, however, the events are used to resurrect a defunct or stale unfair labor practice charge, Section 10(b) bars the consideration of the events.[15] *NLRB v. Auto Warehousers, Inc., supra*, 571 F.2d at 863–64; *Queen Mary Rest. Corp. v. NLRB, supra*, 560 F.2d at 407 n.2; *NLRB v. R. L. Sweet Lumber Co., supra*, 515 F.2d at 790–92.

As the District Court noted, the present case is comparable to the first situation in *Machinist Local 1424*. However, in *Machinist Local 1424* the Supreme Court discussed, but did not resolve, a third situation, which more closely resembles the facts in this appeal.

[S]ome Board cases have gone even further and held § 10(b) a bar in circumstances when, although none of the material elements of the charge in a timely complaint need necessarily be proved through reference to the barred period— so that utilization of evidence from that period is ostensibly only for the purpose of giving color to what is involved in the complaint—yet the evidence in fact marshalled from within the six-month period is not substantial, and the merit of the allegations in the complaint is shown largely by reliance on the earlier events. *See, e. g., News Printing Co.*, 116 N.L.R.B. 210, 212; *Universal Oil Products Co.*, 108 N.L.R.B. 68; *Tennessee Knitting Mills, Inc.*, 88 N.L.R.B. 1103. However, we express no view on the problem raised by such cases   .   .   .  .

362 U.S. at 421–22, 80 S.Ct. at 829.

The Supreme Court has not resolved the questions raised by the third situation, and

---

**15.** Section 10(b) was enacted for the purpose of stabilizing existing bargaining relationships by barring "litigation over past events 'after records have been destroyed, witnesses have gone elsewhere, and recollections of the events in question have become dim and confused.'" *Machinist Local 1424 v. N.L.R.B.*, 362 U.S. 411, 419, 80 S.Ct. 822, 828, 4 L.Ed.2d 832 (1960).

*NLRB v. Colonial Press, Inc.*, 509 F.2d 850, 854 (8th Cir. 1975).

the two circuits which have considered the third situation have reached different conclusions.[16]

The present posture of this appeal does not require a resolution of the question raised in the third situation of *Machinist Local 1424.* Nor is this Court called upon to place the present factual pattern in the first, second or third situation. The initial determination of these issues is reserved exclusively for the Board subject to judicial review under § 10(e), (f). The District Court's injunction merely preserves the status quo until the Board holds a full hearing on the factual and legal issues. It is sufficient in a Section 10(*l*) proceeding that the factual allegations and legal issues are substantial and non-frivolous, albeit novel and untested. The lack of a clear resolution of the issues raised by the third situation in *Machinist Local 1424* demonstrates the need to allow the Board the initial opportunity to apply its expertise to the issues in this case. Accordingly, the District Court's findings of substantial legal issues and reasonable cause to believe an unfair practice occurred are not clearly erroneous.

On this appeal the Union argues, and the Board concedes,[17] that the scope of the preliminary injunction is overbroad in that the Union is enjoined from picketing J. E. D. "for any purpose." [18] Since the Section 10(*l*) injunction is a statutory exception to the Norris-LaGuardia Act, 29 U.S.C. § 101, which denied equitable jurisdiction to Federal District Courts in labor disputes, it should be limited to the narrow jurisdiction of Section 10(*l*). *Compton v. Nat. Maritime Union of America,* 533 F.2d 1270, 1276 (1st Cir. 1976); *Eisenberg v. Hartz Mtn. Corp.,* 519 F.2d 138, 141–42 (3d Cir. 1975). *See also McLeod v. Bus. Mach. & Off. App. Mech. Conf. Bd., supra,* 300 F.2d at 239–41. Therefore, a Section 10(*l*) injunction may enjoin only those unlawful labor practices specified in the Labor Act. *Potter v. Houston Gulf Coast Bldg., T. C.,* 482 F.2d 833, 840–41 (5th Cir. 1973); *McLeod v. Chefs,*

---

**16.** In *Sheet Metal Workers Inter. Assn. v. NLRB,* 110 U.S.App.D.C. 302, 293 F.2d 141 (1961), the District of Columbia Circuit Court of Appeals found the conduct which was the basis of the unfair labor practice complaint, a secondary boycott, occurred exclusively outside the six-month period. However, the actual inducements to employees to engage in a secondary boycott, the event which gave rise to the complaint, occurred within the six-month period. The District of Columbia Circuit Court of Appeals affirmed the District Court's consideration of the anterior events "to 'shed light on the true character' of the objective of [the Union's] conduct within the period. Thus, such events are 'merely evidentiary.' " *Id.,* 110 U.S. App.D.C. at 308, 293 F.2d at 146–47.

The Ninth Circuit addressed the issue raised by the third situation in *NLRB v. McMillian Ring Free Oil Co.,* 394 F.2d 26 (9th Cir. 1968). The evidence within the six-month period of the company's refusal to bargain in good faith was clearly insufficient to support the Board's finding of bad faith bargaining. However, the Court assumed the events preceding the six-month period were sufficient to support the Board's finding. After noting the difficulty of the question, the Ninth Circuit held that the thrust of the Supreme Court's reasoning in *Machinist Union* and the purpose of Section 10(b) barred consideration of the anterior events. *Id.* at 30–33.

However, the distinguishable feature between the present appeal and these cases is the posture of the case. *McMillian* and *Sheet Met-*

*al Workers* were petitions pursuant to §§ 10(e), (f) by the NLRB to the Circuit Courts for an enforcement order after a full hearing by the Board of the unfair labor practice complaint. In contrast, the present appeal is from a temporary injunction enjoining further picketing pending a full hearing by the Board.

**17.** At oral argument, counsel for the Board conceded the scope of the injunction was overbroad and expressed the Board's lack of objection to a modification of the order.

**18.** The Injunction, in relevant part, reads:

IT IS HEREBY ORDERED and adjudged that the respondent, International Union of Operating Engineers, Local 571, its officers, agents and members, are enjoined, pending the final adjudication by the National Labor Relations Board of the charges against the respondent filed on March 22, 1978, from:
1. Continuing to picket or causing to be picketed the J. E. D. Construction Company, Inc., construction site at the Southeast Community College in Lancaster County, Nebraska, for any purpose, or
2. Otherwise engaging in a strike or threatening, coercing or restraining any person engaged in commerce, where the object thereof is forcing or requiring the J. E. D. Construction Company, Inc., to assign particular work to the respondent's members rather than employees in another labor organization.

Cooks, Pastry Cooks, Local 89, 280 F.2d 760, 763–64 (2d Cir. 1960). *See also Youngdahl v. Rainfair, Inc.*, 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1960). Accordingly, an injunction against the Union from picketing "for any purpose" goes beyond the narrow limits of Section 10(*l*).

The final argument of the Union is that the time span of the injunction should not continue in force until final Board action, but rather it should be limited to a definite time. We find the congressional history indicates that Congress was aware of the lengthy Board hearing procedures when Section 10(*l*) was enacted. Since Congress did not impose a time limit on a Section 10(*l*) injunction, we find no reason why this Court should impose such a limit.[19]

The Order of the District Court is affirmed, but remanded with directions to modify its injunctive order by limiting the scope of the Order consistent with this opinion.

---

19. In support of its position, the Union cites *Dawidoff v. Minn. Bldg. and Const. T. C.*, 550 F.2d 407 (8th Cir. 1977). While the holding of *Dawidoff* suggests the District Court may restrict the time span of the injunction, the holding was limited to the specific facts of that case, which are clearly distinguishable from the present case.